**MOTOR DISTRIBUTORS, Limited, et al., Appellants,**

v.

**OLAF PEDERSEN'S REDERI A/S** owner of **THE SUNNY PRINCE,** Appellee.

**No. 16057.**

United States Court of Appeals Fifth Circuit.

Nov. 27, 1956.

Rehearing Denied Jan. 8, 1957.

William Warner, New York City, Douglas D. Batchelor, Miami, Fla., William G. Symmers, New York City, Smathers, Thompson & Dyer, Miami, Fla., and Dow & Symmers, New York City, for appellants.

Richard F. Ralph, Miami, Fla., Charles S. Haight, Gordon W. Paulsen, New York City, Fowler, White, Gillen, Yancey & Humkey, Miami, Fla., and Haight, Gardner, Poor & Havens, New York City, Richard G. Ashworth, New York City, of counsel, for appellee.

Before RIVES, TUTTLE and JONES, Circuit Judges.

TUTTLE, Circuit Judge.

This appeal requires an answer to two questions: (1) Under what circum-

stances should a district court dismiss a libel in rem filed against a foreign ship by nationals of other foreign countries in a cause arising out of a collision on the high seas between foreign vessels of different nationalities on the ground that all parties at interest are citizens of foreign states? (2) To what extent is the exercise by the trial court of its discretion in answering this question subject to review in the Court of Appeals?

This is an appeal from an order dismissing a libel against the M/V Sunny Prince because the trial court "refuse[d] jurisdiction of the suit."

The facts necessary for a determination of the questions raised here are not in dispute.

Appellants, the libelants below, are six owners of cargo on the M/V Hoheweg, a German vessel.[1]

On February 14, 1955, the Hoheweg, proceeding from Germany to Ireland, was struck and sunk on the high seas by the Sunny Prince, a Norwegian vessel, proceeding from the Philippines to Holland. All the crew of the Hoheweg were picked up and the Sunny Prince put in at an English port, its damage was surveyed in the presence of representatives of the Hoheweg interests, and the same night it left for Holland to discharge its cargo and then to Germany to be repaired.

On February 17, 1955, the Norwegian underwriters of the Sunny Prince offered to guarantee British limitations (£39,-300, at £8/net registered ton) and British jurisdiction, provided all the Hoheweg ownership and cargo interests agreed; this offer was accepted by the Hoheweg interests.

On March 5, 1955, owners of the Sunny Prince joined in the above offer of limitations and jurisdiction.

On March 14, 1955, German insurers of the Hoheweg hull accepted the above offer. (To the district court it was originally represented by the appellees that the acceptance was by the German insurers of the cargo; this was apparently not so.)

After repairs the Sunny Prince resumed her trading between the Hamburg-Antwerp area and the Far East, calling on German, Dutch, Bermudan, Cuban, and Philippine ports, but at no other British ports.

On October 21, 1955, Sunny Prince was libeled and arrested in Florida, as soon as she arrived at her first post-accident call on a United States port.

This is how matters stood when the trial court heard claimant-respondent's (appellee's) motion to dismiss the libel. However, before the matter was heard, testimony of the captain and of other officers and crew members was taken by deposition aboard the vessel; logs and other data material to the cause of the collision were produced and identified and appellants' surveyors examined the Sunny Prince's steering mechanism and plans.

The trial court declined to take jurisdiction primarily on the ground that: "This court could exercise jurisdiction, but will entertain jurisdiction in causes between foreign parties arising from losses occasioned by the collision of two foreign vessels on the high seas only in those cases in which an injustice would be visited on either of the parties if the court declined jurisdiction." The court found there was no such showing made.[2]

---

1. 3 Irish corporations, 1 Irish partnership, 1 German, and 1 British corporation. An affidavit later submitted alleged that 16 other similarly situated interests wished to intervene: 12 Irish, 2 British, and 2 German.

2. The major portion of the order is here more fully reproduced:

   "This cause coming on to be heard upon the Claimant-Respondent's Motion to Dismiss filed in this cause on the 21st of November, 1955, and the Court having heard argument of counsel on the 13th of January, 1956, and having examined the briefs submitted, is of the opinion that this Court should decline jurisdiction and should grant the Motion to Dismiss.

   "This cause was instituted by six cargo owners (Nationals of Great Britain (one), Ireland (four) and German (one) ), for the loss of goods aboard the Ger-

Accepting as the leading authority in this field the Supreme Court's decision in The Belgenland, 114 U.S. 355, 5 S.Ct. 860, 29 L.Ed. 152, as do both parties here, we are convinced that the trial court departed from the correct principle of law applicable to situations such as here presented. That rule of law is succinctly stated by Mr. Justice Bradley:

"The subject has frequently been before our own admiralty courts of original jurisdiction, and there has been but one opinion expressed, namely, that they have jurisdiction in such cases, and that *they will exercise it unless special circumstances exist to show that justice would be better subserved by declining it.*" (Emphasis added.) The Belgenland, 114 U.S. 355, 367, 5 S.Ct. 860, 866.

Instead of the rule being, as the trial court here stated, that jurisdiction should be denied unless such denial would work an injustice, the rule is, rather, that jurisdiction should be taken unless to do so would work an injustice.

Nothing in Canada Malting Co., Ltd., v. Paterson Steamships, Ltd., 285 U.S. 413, 52 S.Ct. 413, 76 L.Ed. 837, the other leading case cited by appellee, in any way detracts from this rule. In citing this case in its opinion the trial court failed to recognize the clear distinction between the facts here and those that led the Supreme Court in the Canada Malting Co. case to approve the refusal to accept jurisdiction there. The circumstances as to the libel in rem against the Sunny Prince bring it precisely within the fact situation of The Belgenland. There, as here, all of the parties were citizens of foreign states and the ship was of foreign ownership and registry and the collision occurred on the high seas. Under such circumstances, the Court said:

"Neither party has any peculiar claim to be judged by the municipal law of his own country since the case is pre-eminently one communis juris and can generally be more impartially and satisfactorily adjudicated by the court of a third nation having jurisdiction of the res or parties, than it could be by the courts of either of the nations to which the litigants belong." The

---

man motor vessel 'Hoheweg' which sank off the coast of England on February 14, 1955, after colliding with the Respondent Norwegian motor vessel 'Sunny Prince'. From the uncontroverted facts set forth in Claimant-Respondent's Motion to Dismiss filed on November 21, 1955, it appears that 'the "Sunny Prince" called at Dover, England, immediately after the collision and was surveyed, at which survey the "Hoheweg" interests were represented.' The ship then 'proceeded to Rotterdam for discharging and repairs, and following repairs went to Hamburg, Germany.' No attempt to arrest the M/V 'Sunny Prince' was made at any of these ports, and although there was extensive correspondence and meetings nothing was done until the vessel was arrested at Port Everglades, Florida. Whatever reasons may have prompted and still may prompt forbearance in bringing suit in this jurisdiction are immaterial to the question presented, but there does not appear to be any reason why a suit should not have been brought, or arrest should not have been made, at a place where one or more of the parties in interest and the witnesses reside. This Court could exercise jurisdiction, but will entertain jurisdiction in causes between foreign parties arising from losses occasioned by the collision of two foreign vessels on the high seas only in those cases in which an injustice would be visited on either of the parties if the Court declined jurisdiction. No such showing has been made in this case. Rather, more cogent reasons exist that the suit should be maintained in either England, Norway, or Germany. All of the parties are citizens of either England, Norway, Germany, or the Irish Free State. The M/V 'Sunny Prince' and the M/V 'Hoheweg' were registered under the laws of Norway and Germany respectively. The officers and the crew of each vessel—the material witnesses—would not be available for compulsory attendance in this Court. For these reasons this Court declines jurisdiction in this case. See Canada Malting Co., Ltd. v. Paterson Steamships, Ltd., 1932, 285 U.S. 413, 423, 424 [52 S.Ct. 413, 76 L.Ed. 837]."

Belgenland, 114 U.S. 355, 369, 5 S. Ct. 860, 866."

How different were the facts in the Canada Malting Co. case is clearly shown by the language of the opinion of the Supreme Court in declining to upset the refusal of the trial court to accept jurisdiction. The Court there said:

"There is no basis for the contention that the District Court abused its discretion. All the parties were not only foreigners, but were citizens of Canada. Both the colliding vessels were registered under the laws of Canada, and each was owned by a Canadian corporation. * * * The officers and crew of each vessel—the material witnesses—were citizens and residents of that country. * * * The cargo, in each case, was shipped under a Canadian bill of lading from one Canadian port to another. * * * It is difficult to conceive of a state of facts more clearly justifying the refusal of a District Court to retain jurisdiction in a cause between foreigners." Canada Malting Co., Ltd., v. Paterson Steamships, Ltd., 285 U.S. 413, 423, 424, 52 S.Ct. 413, 416.

The principle of law established in The Belgenland has been followed uniformly in cases where there was a similar fact situation. The Western Farmer, 2 Cir., 210 F.2d 754; The Mandu, 2 Cir., 102 F.2d 459; The Attualita, 4 Cir., 238 F. 909; The Kaiser Wilhelm der Grosse, D.C.S.D.N.Y., 175 F. 215; Chubb v. Hamburg-American Packet Co., D.C.E. D.N.Y., 39 F. 431.

It is manifest that the decisions of the Supreme Court, the Courts of Appeals and the District Courts have established a judicial policy in this important field of maritime law. This policy is stated in the opinion of the Court of Appeals for the Second Circuit in The Western Farmer:

" * * * As Bradley, J., said in The Belgenland, 114 U.S. 355, 365, 5 S.Ct. 860, 865, 29 L.Ed. 152: 'although the courts will use a discre-

tion about assuming jurisdiction of controversies between foreigners in cases arising beyond the territorial jurisdiction of the country to which the courts belong, yet where such controversies are communis juris,— that is, where they arise under the common law of nations,—special grounds should appear to induce the court to deny its aid to a foreign suitor when it has jurisdiction of the ship or party charged. The existence of jurisdiction in all such cases is beyond dispute; the only question will be whether it is expedient to exercise it.' This language Bradley, J., followed by an exhaustive examination of the authorities decided up to that time; and it has never been questioned. We hold that, in the case of a collision on the high seas, an alien plaintiff has the privilege of suing an alien defendant wherever he can serve him, or attach his property; and that, if the defendant would avoid the suit, he must show that he will be unfairly prejudiced, unless it be removed to some other jurisdiction." The Western Farmer, 2 Cir., 210 F.2d 754, 755, 756.

█ █ The next question is whether the circumstances of this case are such as would authorize this Court to set aside the finding of the trial court. As to this matter the Supreme Court itself set the standard:

"The plaintiffs must show that the [trial] judge has exercised his discretion on wrong principles, or that he has acted so absolutely differently from the view which the court of appeals holds, that they are justified in saying he has exercised it wrongly." The Belgenland, 114 U.S. 355, 368, 5 S.Ct. 860, 866.

On both counts it appears to us the discretionary act of the trial court must be set aside. We have demonstrated that it acted on the wrong legal principle; and we have shown as to the particular fact situation here present, the trial court has acted so absolutely differently

from the view that not only this Court but also the other courts mentioned hold that it must be said that the trial court exercised its discretion wrongly. Moreover, the Supreme Court came very close to prescribing an absolute rule of law where it said:

"Indeed, where the parties are not only foreigners, but belong to different nations, and the injury or salvage service takes place on the high seas, *there seems to be no good reason why the party injured,* or doing the service, *should ever be denied justice in our courts.*" (Emphasis added.) The Belgenland, 114 U.S. 355, 368, 5 S.Ct. 860, 866.

The suggestion by the court that the proceedings should have been brought where one or more of the parties in interest and the witnesses reside runs counter to the reasoning of the Supreme Court in The Belgenland, where it is plainly stated that such a case can generally be more impartially and satisfactorily adjudicated by the court of a third nation having custody of the res.

Moreover, something deeply significant in the whole field of maritime law is here at stake. With respect to ocean-going carriers it seems that one of the most universally recognized rules of law is that which gives the right to libelant, possessing a maritime lien against a vessel, to proceed in rem in the jurisdiction where the vessel is found.

Viewing the fact situation that was presented to the trial court, and in light also of the subsequent developments,[3] we are convinced that in the light of the applicable law, the trial court erroneously dismissed the action, and that its judgment must be reversed and the cause remanded for trial.

Reversed and remanded.

---

3. It is made to appear to us by affidavit, as is permissible in admiralty cases, that, based upon consent given by appellees, an action in personam against the owners has been commenced in June 1956 by the owners of the Hoheweg in the British Admiralty Court, and in August 1956 the Sunny Prince was arrested in Germany in rem by German owners of cargo, and forced to post security. Both of these actions might naturally follow the refusal of the United States court, at the insistence of appellee, to accept jurisdiction.

Such added inconvenience as may result to appellee from these additional actions may properly be charged to appellee for its having temporarily succeeded in casting doubt upon the validity of the proceedings in the court below. It cannot complain that it must now defend in other places when it stoutly maintained that the present action should be dismissed. Neither should this result be considered in determining the right of appellants to proceed below.