**POSEIDON SCHIFFAHRT, G.M.B.H.,**
Plaintiff-Appellant,

v.

**The M/S NETUNO, her engines, tackle,**
**apparel, etc., Defendant-Appellee.**

No. 72–1636.

United States Court of Appeals,
Fifth Circuit.

March 1, 1973.

George H. Chamlee, Savannah, Ga.,
for plaintiff-appellant.

W. Spencer Connerat, Jr., Savannah,
Ga., Raymond A. Ballard, Detroit, Mich.,
for defendant-appellee.

Before MORGAN, CLARK and IN-
GRAHAM, Circuit Judges.

INGRAHAM, Circuit Judge:

On August 27, 1971, the Brazili-
an owned M/S Netuno collided with the
M/V TransMichigan, a German owned
vessel, in the waters of Lake Huron.[1]
The present action began in late Septem-
ber 1971, when Poseidon Schiffahrt, the
corporate owner of the TransMichigan,
filed an in rem libel action in the federal
district court for the Southern District
of Georgia. Although it is undisputed
that the district court had jurisdiction
of the res, the court declined to exercise
its jurisdiction because another suit be-

---

1. It appears that a substantial issue on the
merits will be whether the collision oc-
curred in United States or Canadian
waters.

tween the same parties, involving the same issues, was pending in the admiralty courts of Canada,[2] and also upon principles of forum non conveniens. The court accordingly dismissed the libel. The issue on appeal is whether the district court used the proper legal standard in declining to exercise jurisdiction.[3] We hold that it did not, and therefore vacate the district court's order dismissing the libel and remand for further proceedings.

The outcome of this appeal turns on the interpretation of the Supreme Court's decision in The Belgenland, 114 U.S. 355, 5 S.Ct. 860, 29 L.Ed. 152 (1885). The jurisdictional issue there concerned a federal court's exercise of in rem jurisdiction arising from a collision on the high seas between two foreign vessels of different nationalities. The Court stated the controlling principles:

"[A]lthough the courts will use a discretion about assuming jurisdiction of controversies between foreigners in cases arising beyond the territorial jurisdiction of the country to which the courts belong, yet where such controversies are *communis juris*,—that is, where they arise under the common law of nations,—special grounds should appear to induce the court to deny its aid to a foreign suitor when it has jurisdiction of the ship or party charged. The existence of jurisdiction in all such cases is beyond dispute; the only question will be whether it is expedient to exercise it.

\* \* \* \* \* \*

"The subject has frequently been before our own admiralty courts of original jurisdiction, and there has been but one opinion expressed, namely: that they have jurisdiction in

2. We agree with the district court that the pending Canadian action, which was also commenced by Poseidon, is not "a true in rem action." Poseidon Schiffahrt, G.M.B. H. v. M/S Netuno, 335 F.Supp. 684, 687 (S.D.Ga., 1972).

3. We recognize, of course, that the decision to exercise jurisdiction is within the district court's discretion. Canada Malting

such cases, and that they will exercise it unless special circumstances exist to show that justice would be better subserved by declining it."

Id. at 366–367, 5 S.Ct. at 865–866.

In Motor Distributors v. Olaf Pedersen's Rederi A/S, 239 F.2d 463 (5th Cir., 1956), cert. denied, 353 U.S. 938, 77 S.Ct. 816, 1 L.Ed.2d 760, this court was reviewing a district court's decision not to exercise jurisdiction in an in rem libel involving foreign vessels of different nationalities. Applying the general principles articulated in *The Belgenland*, the court concluded:

"[T]he rule is, . . . that jurisdiction should be taken unless to do so would work an injustice."

239 F.2d at 465. In formulating this rule from the general principles set out in *The Belgenland*, the *Motor Distributors* court relied on the Second Circuit's decision in The Western Farmer, 210 F. 2d 754, 755–756 (2nd Cir., 1954), which held:

"[I]n the case of a collision on the high seas, an alien plaintiff has the privilege of suing an alien defendant wherever he can serve him, or attach his property; and that, if the defendant would avoid the suit, he must show that he will be unfairly prejudiced, unless it be removed to some other jurisdiction."

The standard for a federal court to use in determining whether to exercise its jurisdiction in an in rem libel involving foreign vessels of different nationalities is, therefore, that the court should exercise its jurisdiction unless the defendant can establish that to do so would work an injustice.

Co. v. Paterson Steamships Ltd., 285 U.S. 413, 419–420, 52 S.Ct. 413, 76 L.Ed. 837 (1932). This discretionary decision must, however, "be grounded upon correct legal principles." Anglo-American Co. v. The S/T Mina D'Amico, 169 F.Supp. 908 (E.D.Va., 1959). *See* The Belgenland, 114 U.S. 355, 368, 5 S.Ct. 860, 29 L.Ed. 152 (1885).

In our case the district court did not apply this standard. Instead, the court appears to have used a balancing test as the following statement illustrates:

> "Taken in the round, the considerations favoring nonentertainment of jurisdiction outweigh those in support of retention. . . . No injustice will result from abstention." [4]

In reaching this conclusion the district court thoroughly analyzed the circumstances in this case and cannot be faulted for the conclusion reached on the basis of its analysis.[5] The problem is that the court did not apply the proper standard while making its analysis.[6]

As the *Motor Distributors* court held, the question is not whether an injustice will result if the court does not exercise jurisdiction, but whether exercising jurisdiction will result in an injustice. See note 3, *supra*. The distinction is more than one of semantics. Under the proper standard, the court must begin with the assumption it will exercise jurisdiction unless it is established, by the defendant, that an injustice would follow. The *Motor Distributors* rule requires an affirmative conclusion that to exercise jurisdiction "would work an injustice." This conclusion was not reached by the district court as a basis for dismissing the libel. The decision must therefore be vacated and the cause remanded for the court to reassess its conclusion not to exercise jurisdiction using the proper legal standard.

Vacated and remanded.

---

4. 335 F.Supp. at 690. The quoted sentence is similar to that used by the district court which was reversed in *Motor Distributors* because it applied the wrong principles in its discretionary decision not to exercise jurisdiction.

> "Instead of the rule being, as the trial court here stated, that jurisdiction should be denied unless such denial would work an injustice, the rule is, rather, that jurisdiction should be taken unless to do so would work an injustice." Id., 239 F.2d at 465.

5. The following factors seem to be the most influential in the court's decision not to exercise jurisdiction: (1) that another action involving the same parties and the same issues was pending in a Canadian court; (2) that a counterclaim had been filed in the Canadian action; (3) that all parties involved were signatories of the Brussels Convention; (4) that matters of international comity were involved; and (5) that the Georgia forum was not the most convenient forum.

  This last factor is derived from the court's reference to the doctrine of *forum non conveniens*. While this doctrine is applicable in admiralty cases and its application is peculiarly dependent on the facts present in a particular case, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67

S.Ct. 839, 843, 91 L.Ed. 1055 (1947). The applicability of this doctrine to the case at bar should also be considered in light of the following statement by the *Motor Distributors* court at 467 of 239 F.2d:

> "Moreover, something deeply significant in the whole field of maritime law is here at stake. With respect to oceangoing carriers it seems that one of the most universally recognized rules of law is that which gives the right to libelant, possessing a maritime lien against a vessel, to proceed in rem in the jurisdiction where the vessel is found."

6. The district court avoided applying the *Motor Distributors* rule by distinguishing that case on its facts. While this process of legal analysis is often a proper method for avoiding the application of a particular rule of law, the standard formulated in *Motor Distributors* is not to be restricted to the facts in that case. The purpose of the *Motor Distributors* rule is to furnish a framework—a method of analysis—to be used in all cases involving an in rem libel arising from a collision between foreign vessels of different nationalities. This, of course, does not mean that the decision of a district court must always be the same as that reached in *Motor Distributors*; it only means that the decision must be reached by applying the *Motor Distributors* standard.