**PERUSAHAAN UMUM LISTRIK NEGARA PUSAT, et al., Plaintiffs-Appellants,**

v.

**M/V TEL AVIV, etc., et al., Defendants-Appellees.**

No. 82–2280.

United States Court of Appeals, Fifth Circuit.

Aug. 15, 1983.

---

Martin B. Mulroy, Houston, Tex., for plaintiffs-appellants.

Alan Dale, Houston, Tex., for defendants-appellees.

Before GOLDBERG, GEE and RANDALL, Circuit Judges.

GEE, Circuit Judge:

In this dispute between parties of different foreign nationalities concerning a collision on the high seas, the sole relevant contact with the United States forum was the presence of the defendant ship in the port of Houston some two and one-half years after the collision. Nevertheless, the question before us is not whether the court had jurisdiction to decide the case, for it is well settled that the courts of this country have that power. The question instead is whether the court properly declined jurisdiction, for it is equally well settled that forum non conveniens considerations permit, and may impel, a court to dismiss a case over which it has jurisdiction. In this case, we review closely the forum non conveniens law and the district court's conditional dismissal. Having done so, we affirm it.

### Facts

This action arises from a collision in November 1979, between two vessels engaged in international commerce, an Israeli ship with Israeli crew, the M/V Tel Aviv, and an Indonesian ship with Indonesian crew, the M/V Djatimulia. The ships collided in international waters at the Mediterranean end of the Strait of Gibraltar. Neither ship was able to complete its voyage. A British

tug with British crew, witness to the collision on its radar, towed the M/V Djatimulia to Malaga, Spain. The M/V Tel Aviv proceeded under her own power to Cadiz, Spain, and then on to Lisbon, Portugal. Each vessel and cargo was surveyed by damage experts employed by British salvors.

Plaintiffs in the present action, none of whom are United States citizens, are the owners of approximately 62% of the cargo which was on board the M/V Djatimulia at the time of the collision. In March 1982, plaintiffs found the M/V Tel Aviv in the port of Houston and filed and perfected an *in rem* admiralty action in the Southern District of Texas.[1] The district court dismissed the action on forum non conveniens grounds, on the condition that defendant "appear and submit to the jurisdiction of the Court in London and provide security equivalent in amount to that on file in this cause." With this the court effectively transferred the dispute to the Admiralty Court in London, where plaintiffs also had on file an *in rem* action against the M/V Tel Aviv. The London action had been filed in October 1981, before the filing of the action in the Southern District, but it was never perfected because the M/V Tel Aviv was not present to be served.[2]

A related action is before the same London court. In November 1981, the Indonesian corporation that owns the M/V Djatimulia, Jakarta Lloyd, filed an *in rem* action there against the M/V Tel Aviv. The owners of the cargo on board the M/V Djatimulia not represented by the plaintiffs in the present action have joined in Jakarta Lloyd's London action. That action has

never been perfected against the ship, but the owners of the M/V Tel Aviv have submitted to the jurisdiction of the London Court.

The contest between these parties over whether this suit is to be tried in the courts of the United States or those of England is motivated in large part by the desire to select between different rules of law, a motivation often underlying such motions to dismiss for forum non conveniens. An English rule attributes the fault of the carrying vessel to its cargo, thus limiting in many cases the recovery that cargo can obtain from the colliding vessel. The Drumlanrig, (1911) A.C. 16. In the United States, to the contrary, cargo can recover full damages against a negligent vessel irrespective of the fault of its carrying vessel. *E.g.*, *The New York*, 175 U.S. 187, 209–10, 20 S.Ct. 67, 75, 44 L.Ed. 126 (1899). Because these vessels are likely to share fault, the English rule will favor the defendant shipowner.[3]

## *Forum Non Conveniens and In Rem Actions*

Today's case comprises parties, witnesses and physical evidence from locations as diverse as the Middle East, the Far East and Europe. This confluence of international contacts is typical of modern international commerce. Yet, our review of relevant jurisdictional law begins with a nineteenth century Supreme Court opinion, *The Belgenland*, involving a maritime collision of similar international proportions. 114 U.S. 355, 5 S.Ct. 860, 29 L.Ed. 152 (1884). Nearly a full century after that decision was

---

1. Under threat of seizure *in rem* the Israeli corporation that owns the M/V Tel Aviv, El Yam Bulk Carriers (1967) Ltd., agreed to post bond and appear on behalf of its vessel. In addition, El Yam was served *in personam* through the master of the M/V Tel Aviv as its agent. The M/V Tel Aviv frequently called on the ports of this country, making 22 calls in 19 United States ports between the date of the collision, November 6, 1979, and January 1, 1982. These stops were made primarily in ports on the American gulf coast.

2. From a review of Lloyd's Shipping Index prepared by a witness deposed by plaintiff, there is

no record that the M/V Tel Aviv called at any English port between the date of the collision and the date it was seized in Houston. An *in rem* action was also brought by the plaintiffs against the M/V Tel Aviv in the Southern District of New York; this action has never been perfected. Such actions often are filed in several jurisdictions where the defendant ship may seek a port before the ship is actually seized.

3. The cargo owners who have joined Jakarta Lloyd's London action would not be able to benefit from the United States law because they were insured by the same underwriters as their carrying vessel, the M/V Djatimulia.

rendered, the essential question persists: in what cases should a court of this country exercise jurisdiction over foreign parties when its sole connection with the dispute is its *in rem* control over the defendant?

The dispute in *The Belgenland* presented this question and the Court answered it by upholding jurisdiction. That case resulted from a collision on the high seas between a Belgian and a Norwegian vessel. The defendant ship was seized *in rem* when it called at the port of Philadelphia for repairs. The Court acknowledged that in general "courts will use a discretion about assuming jurisdiction of controversies between foreigners in cases arising beyond the territorial jurisdiction of the country to which the courts belong." 114 U.S. at 365, 5 S.Ct. at 864. Yet, after reviewing the longstanding policy in Anglo-American law "to allow a party alleging grievance by a collision to proceed *in rem* against the ship wherever found," [4] the Court expressed the opinion that the courts "have jurisdiction in such cases and that they will exercise it unless special circumstances exist to show that justice could be better subserved by declining it." 114 U.S. at 367, 5 S.Ct. at 865.

Although the Court affirmed jurisdiction in *The Belgenland,* the notion that "special circumstances" may induce a court to decline jurisdiction was acknowledged in that case and has been applied in admiralty actions for well over a century.[5] The doctrine of forum non conveniens has developed to guide courts in determining whether such special circumstances exist. This doctrine represents a major exception to the general

principle that our courts "are bound to proceed to judgment, and to afford redress to suitors before them, in every case to which their jurisdiction extends. They cannot abdicate their authority or duty in any case in favor of another jurisdiction." *Hyde v. Stone,* 61 U.S. (20 How.) 170, 175, 15 L.Ed. 874 (1858).

Although long accepted in admiralty, the doctrine was not formally applied by the Supreme Court to non-admiralty cases until *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).[6] There a federal diversity action was brought in New York by a Virginia resident against a Pennsylvania corporation for the negligent delivery of gasoline to plaintiff's warehouse in Virginia; the gasoline exploded and the ensuing fire consumed the warehouse. The Court reinstated a forum non conveniens dismissal because the substantial weight of the contacts relevant to the dispute were in Virginia, not New York. Defendant had been amenable to suit in New York solely because it was qualified to do business and had designated officials to receive service of process there.

In an opinion which has been recognized as having "crystallized"[7] the law of forum non conveniens, the *Gilbert* Court all but codified the relevant law. Explaining that venue statutes are of necessity general—intended to assure plaintiffs some forum in which to pursue a remedy—the Court characterized the forum non conveniens doctrine as a judicial response to the possible misuse by plaintiffs of their ability to select forums. In the words of the Court, "[t]he

4. This statement of the policy was taken from a nineteenth century English case. *The Griefswald,* 1 Swab. 430 (1859). In fact, the practice of permitting *in rem* jurisdiction over defendant ships in admiralty "has prevailed during a period extending as far back as the history of [admiralty] tribunals can be traced." *Atkins v. Fiber Disintegrating Co.,* 85 U.S. (18 Wall.) 272, 303, 21 L.Ed. 841 (1873).

5. *See Canada Malting Co. v. Paterson Steamships, Ltd.,* 285 U.S. 413, 52 S.Ct. 413, 76 L.Ed. 837 (1932) (and cases cited therein, especially those at notes 3 and 4); *The Belgenland,* 114 U.S. at 363–64, 5 S.Ct. at 863, 864 (and cases cited therein). *See generally* Bickel, The Doc-

trine of Forum Non Conveniens As Applied in the Federal Courts in Matters of Admiralty, 35 Cornell L.Q. 12 (1949).

6. *See also Koster v. Lumbermans Mut. Cas. Co.,* 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947) (companion case). Actually, in the term before *Gilbert* the Court first indicated that the forum non conveniens doctrine might have application in a federal diversity action. *William v. Green Bay & Western R. Co.,* 326 U.S. 549, 66 S.Ct. 284, 90 L.Ed. 31 (1946).

7. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 248 and n. 13, 102 S.Ct. 252, 262 and n. 13, 70 L.Ed.2d 419 (1981).

open door may admit those who seek not merely justice but perhaps justice blended with some harassment." 330 U.S. at 507, 67 S.Ct. at 842.

After reviewing the foundations of the doctrine, the Court outlined the considerations relevant to a forum non conveniens dismissal. Most pressing are the "private" interests of the litigants, including access to sources of proof and enforceability of judgments. Also to be considered are "public" interests including the relationship between the forum and the dispute and the familiarity of the forum with the relevant law. Although "plaintiff's choice of forum should rarely be disturbed," dismissal may be necessary in the interests of convenience and justice if "the balance [of public and private interests] is strongly in favor of the defendant['s]" choice of a different forum. *Id.* at 508, 67 S.Ct. at 843. Justice would not be subserved by the retention of jurisdiction in such cases. The court would be forced to expend resources to review a dispute over which its constituents have no interest and the defendant would be restricted in presenting his defense.

The explanation found in *Gilbert* of the need for forum non conveniens dismissals in non-admiralty cases—to avoid misuse of general venue statutes—demonstrates why the doctrine was created originally by courts sitting in admiralty: admiralty cases are free of such restrictions. Jurisdiction over the defendant vessel is based instead on the *locus rei sitae* doctrine.[8] Not until *Gilbert* did the Supreme Court acknowledge that venue statutes were no longer adequate to control case distribution in non-ad-

miralty actions and that forum non conveniens dismissals were needed to assist in this function.

In its day *Gilbert* represented the Supreme Court's express endorsement of the extension of forum non conveniens dismissals from admiralty to non-admiralty cases. It is ironic,[9] therefore, that appellants argue before us that *in rem* admiralty actions present a special exception virtually immune from forum non conveniens dismissals. This argument stands the history of forum non conveniens law on its head. As we have seen, for decades before its acceptance in landside actions, forum non conveniens was used by admiralty courts—often in cases involving *in rem* jurisdiction.[10]

And yet, appellant's position that *in rem* admiralty actions represent an exception to forum non conveniens law is not without support in reason or precedent. In fact, a line of cases approved by this circuit can be read to support just such an exception. In a case involving a collision on the high seas between parties of different foreign nationalities, this circuit relied upon *The Belgenland* and its progeny to reverse a forum non conveniens dismissal. *Motor Distributors v. Olaf Pedersen's Rederi A/S,* 239 F.2d 463 (5th Cir.1957). In this opinion, the court provided ammunition for the later contention that forum non conveniens is not applicable to *in rem* admiralty actions.

*Motor Distributors* was decided a decade after the Supreme Court's leading forum non conveniens decision, *Gilbert,* but it conspicuously ignored the *Gilbert* analysis[11] and indeed eschewed the forum non conven-

**8.** *See The Belgenland,* 114 U.S. at 366, 5 S.Ct. at 865 (citing *The Jerusalem,* Fed.Cas.No. 7,293 (C.C.Mass.1814) (Storey, J.)).

**9.** Indeed, Justice Black, dissenting in *Gilbert,* maintained a position precisely contrary to that asserted by appellants before us. Justice Black resisted the extension of forum non conveniens to non-admiralty cases, insisting that the doctrine is only appropriate "in relation to the extraordinary admiralty and equity powers of the district courts ... for reasons peculiar to the special problems of admiralty and the extraordinary remedies of equity." 330 U.S. at 513, 67 S.Ct. at 845. Yet, as our subsequent analysis demonstrates, neither the position tak-

en by Justice Black nor that taken by appellants in this matter accurately represents the current law.

**10.** Only two years after applying forum non conveniens to landside cases, the Supreme Court pointed out that the doctrine "is of long standing in admiralty." *Swift & Co. v. Compania Colombiana,* 339 U.S. 684, 697, 70 S.Ct. 861, 869, 94 L.Ed. 1206 (1949).

**11.** The opinion in *Motor Distributors* represents that both parties accepted *The Belgenland* as "the leading authority in this field," and therefore the *Gilbert* factors may not have been argued before the court. 239 F.2d at 465.

iens language altogether.[12] Giving birth to the alleged admiralty exception, the court declared it "manifest that the decisions of the Supreme Court, the Courts of Appeals and the District Courts have established a judicial policy in this important field of maritime law." 239 F.2d at 466. This judicial policy induced the court to announce the "rule" that, in *in rem* admiralty actions, "jurisdiction should be taken unless to do so would work an injustice." *Id.* at 465.

■ On its face the injustice standard of *Motor Distributors* is very different from the balancing standard announced in *Gilbert*.[13] As a result, courts have sometimes applied the *Motor Distributors* injustice standard to *in rem* admiralty actions while disregarding the *Gilbert* balancing analysis.[14] In fact, this circuit has explained that the "purpose of the *Motor Distributors* rule is to furnish a framework—a method of analysis—to be used in all cases involving an *in rem* libel arising from a collision between foreign vessels of different nationalities." *Poseidon,* 474 F.2d at 205. Although we concede that *Motor Distributors* has spawned a line of *in rem* admiralty cases in this circuit that can be read to create an exception to the *Gilbert* balancing analysis, today we address the question whether they should be read this way.

Our answer to this question is no. *In rem* admiralty actions do not represent an ex-

ception to the *Gilbert* balancing analysis. The issue in both *Motor Distributors* and *Gilbert* was the same. In both cases the appellate courts reviewed the dismissal of a matter over which the court had jurisdiction but declined to exercise it on roughly the ground that the forum selected by the plaintiff was inappropriate because of the lack of contacts between the forum and the dispute. In all of its manifestations, this question is one of forum non conveniens. Although the court in *Motor Distributors* disregarded the *Gilbert* analysis and articulated its own rule, it is beyond question that the Supreme Court's opinion in *Gilbert* is the "fountainhead" decision applicable in all forum non conveniens cases.[15] *Chiazor v. Transworld Drilling Co., Ltd.,* 648 F.2d 1015, 1019 (5th Cir.1981).

Careful analysis tends to reconcile *Motor Distributors* with *Gilbert.* By definition, the issue of forum non conveniens requires a court to evaluate what injustice may result from an exercise of jurisdiction over a matter where it is asserted that trial would be inconvenient because the contacts between the forum and the dispute are insubstantial. But the *Gilbert* opinion tells us more than this. *Gilbert* demonstrates that forum non conveniens "presupposes at least two forums in which the defendant is amenable to process; the doctrine furnishes criteria for choice between them." 330 U.S. at 506–07, 67 S.Ct. at 842.[16] Choosing be-

---

**12.** The court in *Motor Distributors* cited with approval a series of cases that had "uniformly" followed *The Belgenland,* none of which use the term forum non conveniens. 239 F.2d at 466. The practice of dismissing on forum non conveniens grounds without specifically invoking the doctrine by name is not new. In the early cases in this country applying the doctrine, forum non conveniens was rarely invoked by name. *E.g., The Belgenland,* 114 U.S. 355, 5 S.Ct. 860, 29 L.Ed. 152; *see generally* Blair, The Doctrine of Forum Non Conveniens in Anglo-American Law, 29 Colum.L.Rev. 1, 2 (1929).

**13.** *Motor Distributors* required defendant to make an affirmative showing that he would suffer an injustice if the court exercised jurisdiction; *Gilbert* set up a somewhat lower hurdle, requiring defendant to show that the weight of the *Gilbert* factors were substantially in his favor. By the term substantially, we refer to *Gilbert*'s articulation of the standard, where the "balance is strongly in favor of the defendant." 330 U.S. at 508, 67 S.Ct. at 843.

**14.** *E.g., Poseidon Schiffahrt, G.M.B.H. v. M/S Neptune,* 474 F.2d 203, 205 (5th Cir.1973) (district court's dismissal of case based on balancing analysis was vacated by application of injustice standard); *Damudar Bulk Carriers, Ltd. v. A/S Det Dansk-Franske D/S,* 1981 A.M.C. 1734 (S.D.Tex.1979) (pure injustice standard applied). *See also* Recent Developments, 44 Fordham L.Rev. 413, 418–19 (1975) (Fifth only Circuit to apply injustice rather than balancing standard).

**15.** It is sometimes overlooked that on one occasion this circuit has acknowledged that the doctrine of forum non conveniens announced in *Gilbert* is "applicable in admiralty cases." *Poseidon,* 474 F.2d at 205 n. 5. Today we more fully explicate its application.

**16.** *See also Piper,* 454 U.S. at 254 n. 22, 102 S.Ct. at 265 n. 22.

tween them requires the court to weigh the convenience of plaintiff's choice of forum against the convenience of defendant's alternative choice, with the scale weighted substantially against defendant's motion to dismiss.

The decision in *Gilbert,* reinstating the district court's dismissal, was not close. The plaintiff was "without even a suggested reason for transporting this suit to New York," and all the *Gilbert* factors pointed toward Virginia as the most convenient forum. All of the parties, witnesses and physical evidence resided there. Because the balance was overwhelmingly in favor of defendant's choice of forum, the opinion tells us little about the precise balance of factors needed to dismiss. We know only that the balance must "strongly" favor the defendant. In addition, although providing a rough outline of relevant contacts, the Court was careful to explain that, "[t]he doctrine leaves much to the discretion of the court to which plaintiff resorts," because "the combination and weight of factors to given results are difficult to forecast or state." *Id.* at 508, 67 S.Ct. at 843.

In the typical *in rem* admiralty case, a court is faced with a constellation of interest factors whose combination and weight are altogether different from those before the Court in *Gilbert.* In the *Motor Distributors* line of cases, the courts were faced with cases in which most of the relevant contacts were located outside the plaintiff's choice of forum, and yet the courts uniformly held that jurisdiction should be retained. The only fixed contact between the forum and the dispute in these cases was *in rem* control over the defendant. Yet, this contact was repeatedly held sufficient. Indeed, by reviewing the location and weight of the interests involved, it appears that the distinctive feature in the *Motor Distributors* line of cases was the *in rem* nature of the proceeding.

That these cases also involved collisions on the high seas to be decided under the law *communis juris* precluded certain substantial contacts with foreign forums.[17] In addition, the courts pointed out that, when the parties are of diverse foreign nationalities, dismissal in favor of one of the parties' home forums should be avoided if the court were concerned that this forum would be partial to its home party; this would be a factor mitigating against the choice of such an alternative forum.[18] It was, however, the *in rem* control over the defendant ship that above all else led the courts to adopt the rule mandating jurisdiction absent injustice.

Plaintiff's "right" to proceed *in rem* against the vessel where found was described by the *Motor Distributors* court as "one of the most universally recognized rules of law" with respect to international commercial vessels. 239 F.2d at 467. As we have noted, the rationale underlying this rule had been provided long ago by an English admiralty court, in a passage adopted by the Supreme Court in *The Belgenland:*

> In cases of collision it has been the practice of this country, and, so far as I know, of the European States and of the United States of America, to allow a party alleging grievance by a collision to proceed *in rem* against the ship wherever found, and this practice, it is manifest, is most conducive to justice, because in very many cases a remedy *in personam* would be impractical . . . .

> If [plaintiffs] must wait until the vessel that has done the injury returned to its own country their remedy might be altogether lost, for she might never return.

114 U.S. at 367, 5 S.Ct. at 865 (quoting The Johann Friederich, 1 W.Rob. 35 (1839)).

The interests supporting the retention of jurisdiction in an *in rem* action are substantial. The public interest is implicated by

---

**17.** For examples of such contacts see *Piper,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (accident occurred in foreign forum); *DeOliveira v. Delta Marine Drilling Co.,* 707 F.2d 843 (5th Cir.1983) (tort victim resident of foreign forum and accident occured in that forum); *Chiazor,* 648 F.2d 1015 (accident occurred off coast of foreign forum; law of foreign forum applies).

**18.** *E.g. The Belgenland,* 114 U.S. at 368–69, 5 S.Ct. at 866; *Motor Distributors,* 239 F.2d at 467.

the need to provide plaintiffs with jurisdiction over vessels where they can be found. The private interest is implicated by the inconvenience plaintiff will suffer if his *in rem* action is dismissed. A dismissal will deprive him both of jurisdiction over the defendant and of control over a valuable asset. It is accepted wisdom that, in the special case of a collision on the high seas between parties of different nationalities, a "remedy might be altogether lost" if plaintiff loses his *in rem* jurisdiction over defendant.

In the terms of the *Gilbert* balancing analysis, the *in rem* factor pitched the balance in favor of plaintiff; this factor added to the normal presumption in favor of plaintiff's choice of forum. In this context, it is virtually impossible for a defendant to produce a showing of interests in an alternative forum strong enough to strike the forum non conveniens balance "strongly" in his favor. To do so the defendant must show that, as a result of the exercise of jurisdiction, he would suffer inconvenience tantamount to injustice. This is precisely what *Motor Distributors* tells us about the proper application of *Gilbert* to *in rem* admiralty cases. The injustice standard represents not an exception to but a special application of the balancing analysis.

■ Although we have demonstrated that the balancing analysis is applicable to all forum non conveniens decisions, the inquiry does not end here. More accurately, it does not begin here. The balancing analysis is predicated upon the finding that there exists an adequate and available alternative forum. As the Supreme Court

has explained, "[a]t the outset of any *forum non conveniens* inquiry, the court must determine whether there exists an alternative forum." *Piper*, 454 U.S. at 254 n. 22, 102 S.Ct. at 265 n. 22. This finding is necessary because forum non conveniens "presupposes at least two forums in which the defendant is amenable to process." *Gilbert*, 330 U.S. at 506–07, 67 S.Ct. at 842. If no alternative forum is available to plaintiff, a forum non conveniens dismissal should not be granted.[19]

■ In addition to being available, the alternative forum must be adequate. In *Piper*, the Court held that a change in law unfavorable to plaintiff should not play a significant role in the forum non conveniens balancing analysis unless, the Court hypothesized, "the remedy [offered by the alternative forum] is so clearly inadequate or unsatisfactory that it is no remedy at all." *Piper*, 454 U.S. at 254, 102 S.Ct. at 265.[20] In such a case, the alternative forum may not be an "adequate alternative" and dismissal may be inappropriate on this ground alone.

A forum non conveniens dismissal should never be granted, irrespective of the balance of *Gilbert* factors, unless the defendant can satisfy the court that an adequate and available alternative forum exists. For this reason, we posit that, based entirely on the adequate and available analysis, courts may be compelled to deny forum non conveniens dismissals in many *in rem* admiralty cases prior to reaching the balancing analysis.[21] This is so because of the peculiar nature of *in rem* jurisdiction in the admiralty context. In admiralty, a vessel ordinarily may be seized *in rem* on only one

19. There has been some debate in this circuit over whether an alternative forum must be available at the time when plaintiff brought the original action or at some later time. It is clear from our analysis that the alternative forum must be available at the time of dismissal. Only with this understanding of the availability requirement do we respect the explanation provided by the Court in *Gilbert* that forum non conveniens is a "choice between forums." This holding is consistent with the most recent position adopted by this circuit. *Vaz Borralho v. Keydril Co.*, 696 F.2d 379, 393 n. 12 (5th Cir. 1983). *See* discussion of this issue in *Veba-Chemie v. M/V Getafix*, 711 F.2d 1243, 1245 (5th Cir.1983).

20. The change of law identified by plaintiffs in the case before us, presenting the English rule attributing the fault of the vessel carrying the cargo to the cargo owners, will not be considered as a factor for retaining jurisdiction. It is not nearly so grievous as to represent "no remedy at all."

21. Although this result may be fashioned as an exception to the balancing analysis, it was not present in the *Motor Distributors* cases and it does not support the exception claimed by the appellants in the present case. The adequate and available analysis is simply a threshold inquiry leading to the balancing analysis.

occasion, because the seizure releases the vessel from the maritime lien related to the claim.[22] Therefore dismissal of an *in rem* action may present plaintiff with no alternative forum where jurisdiction is available. Even in those cases where plaintiff can obtain *in personam* jurisdiction over defendant and an alternative forum thus becomes available, the inability to attach the vessel as security for the enforcement of judgment may render the remedy offered by the alternative forum "no remedy at all" and therefore inadequate. Recognition of these procedural circumstances may have prompted earlier courts to adopt the injustice standard.

■ Whether we characterize the interests favoring the retention of jurisdiction in *in rem* admiralty cases as determinative—in the context of the adequate and available analysis—or substantial—in the context of the balancing analysis—we find that the conditional dismissal before us today overcomes both of these barriers to dismissal. First, by requiring defendant to submit to the jurisdiction of and post equivalent security in the alternative forum, the conditional dismissal satisfies both the concerns of availability and adequacy. Second, reviewing the dismissal under the balancing analysis, we determine that defendant's showing of convenience in the English forum substantially outweighs plaintiff's showing of convenience in the Southern District of Texas.

In the *Motor Distributors* cases, plaintiffs' showing of private interest in the *in rem* forum derived from the inconvenience they would suffer as a consequence of an unconditional dismissal. An unconditional dismissal in such cases would have wholly, and in some instances permanently, deprived plaintiff of the value of his *in rem* action. He would have lost jurisdiction over defendant and attachment of the vessel. The public interest of the *in rem* forum—the interest in providing an opportunity to catch the vessel where found—also would have been forfeited by an unconditional dismissal.

A conditional dismissal, to the contrary, preserves these interests by effectively transferring[23] them to the alternative forum. In the present case, by eliminating the public and private interests in the *in rem* forum, the conditional dismissal has left plaintiffs with no relevant *Gilbert* factors on their side of the scale. None of the parties, witnesses or sources of proof reside in the Southern District of Texas, or in this country. Even at the time of seizure in this forum, the crew of the M/V Tel Aviv was entirely different from those on board the vessel at the time of the collision.

In addition, the Southern District of Texas retains no public interest in proceeding to trial in this forum. Factors of public interest generally will count for little in *in rem* cases involving collisions on the high seas between parties of diverse foreign nationalities, for it will be rare that any forum will have a particular "relation to the litigation." *See Gilbert,* 330 U.S. at 508–09, 67 S.Ct. at 843. In addition, because this action arises under the law *communis juris,* there need be no concern that this case will be tried in a forum which is less familiar than another with the law being applied. *See id.* at 509, 67 S.Ct. at 843. The only public interest possessed by the Southern District—the desire to permit the plaintiff to seize the vessel where found—is satisfied

---

**22.** *United States v. "The Haytian Republic",* 154 U.S. 118, 125–28, 14 S.Ct. 992, 994–95, 38 L.Ed. 930 (1894); *Gray v. Hopkins-Carter Hardware Co.,* 32 F.2d 876, 878 (5th Cir.1929); *Pacific Vegetable Oil Corp. v. SS Shalom,* 249 F.Supp. 503, 505 (S.D.N.Y.1966); Black and Gilmore, The Law of Admiralty, 798–99 (2d ed. 1975).

**23.** By using the term "transfer" in this context, we do not intend the conditional dismissal to be confused with transfers permitted between federal courts pursuant to § 1404(a). 28 U.S.C.

§ 1404(a). This section is a legislative device which provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The two devices simply share the objective of avoiding the inconvenience and potential injustice of conducting trial in an inappropriate forum; they apply in different circumstances and involve different standards for dismissal. *See Veba-Chemie,* 711 F.2F.2d 1246–48.

by the conditional dismissal in this case. The seizure is not nullified, merely transferred.

Despite the fact that we are left with no identifiable *Gilbert* factors supporting the retention of jurisdiction, plaintiffs nevertheless retain the heavy presumption in favor of their choice of forum.[24] A plaintiff's interest in this choice is itself sufficient to tilt the scale in his favor. The burden is always on defendant to present a collection of convenience factors in support of his motion to dismiss which strongly favor trial in a specific alternative forum. In the present case, defendant has presented contacts with the English forum that overcome this burden.

The principal testimony at trial will come from experts representing the various salvage companies,[25] all British, hired separately by the owners of the M/V Djatimulia, the M/V Tel Aviv and the cargo on board the M/V Djatimulia. In addition, testimony may be elicited from the crew of the British tug, The Irishman, which observed the collision on its radar and accompanied the damaged M/V Djatimulia to Spain. The Irishman is owned by yet another British salvage company which contracted with the owners of the M/V Djatimulia to have The Irishman stand by the damaged ship during repairs. All of these salvage companies have conducted their work in relation to this collision out of their respective offices in England. This will bring their personnel and records within the compulsory process jurisdiction of the English forum and trial there will reduce the costs of obtaining their testimony.[26]

The Court in *Gilbert* also recognized a party's need to implead other parties as an interest relevant to the forum non conveniens determination, 330 U.S. at 511, 67 S.Ct. at 844, and in the present case we find this factor of particular significance. As with most collisions on the high seas, this case is likely one of mutual fault. Therefore, in this suit brought by cargo owners, the defendant vessel, the M/V Tel Aviv, has a strong interest in impleading the other vessel involved in the collision, the M/V Djatimulia, as a co-defendant.[27] There is no suggestion that the M/V Djatimulia can be brought within the jurisdiction of the Southern District, but this vessel has already invoked the jurisdiction of the English courts by suing the M/V Tel Aviv there. In fact, when the parties to the present action come before the London court, that court will have before it all parties who have shown an interest in the dispute.[28]

**24.** The Supreme Court has pointed out that when a plaintiff selects his home forum, his choice of forum is entitled to greater deference than when he selects a foreign forum. *Piper,* 454 U.S. at 255, 102 S.Ct. at 265. In an *in rem* admiralty case, however, unless there is a specific showing to the contrary, we will assume that the forum selected by the plaintiff is convenient because of the presence of the defendant vessel. We therefore are not as suspicious of a plaintiff's motive for bringing his action in a foreign forum as we might be in an *in personam* action.

**25.** As is common with international commercial vessels, there is no way to predict where the crews of the two vessels involved are likely to be located at the time of trial. The convenience of obtaining their testimony at trial therefore may not strongly favor any particular forum.

**26.** In considering the convenience of obtaining testimony, we recognize that the availability of compulsory process is of less value in the case of expert witnesses than in the case of disinterested eye-witnesses. Experts, especially maritime salvors, are accustomed to traveling over the world both to view and participate in the repair of vessels and to provide testimony at trials in distant forums. Although the compulsory process of the English forum may become valuable to obtain the trial or deposition testimony of a now uncooperative expert, we view instead the reduced costs of obtaining their testimony as the proper characterization of convenience in the present case. *See Gilbert,* 330 U.S. at 508, 67 S.Ct. at 843.

**27.** We find this interest to be particularly strong in a jurisdiction like the Southern District, where the vessel may be held liable for the full cargo loss irrespective of its degree of fault.

**28.** The same reasoning was adopted by the Supreme Court in *Piper.* In that case, the Court held that "[t]he District Court correctly concluded that the problems posed by the inability to implead potential third-party defendants clearly supported holding trial in [the alternative forum].... It would be far more convenient to resolve all claims in one trial." 454 U.S. at 259, 102 S.Ct. at 267.

We concede that the English forum may not have a substantial public interest in this dispute. A collision on the high seas rarely creates a nexus of public interests in any particular forum. Yet, we find that because of the concentration of witnesses and related litigation there, the English forum has a substantially greater relation to the litigation than does the Southern District. Ultimately, however, it is our intention to leave the interpretation of the English forum's public interest to the London Court; they may manifest a public interest merely by accepting jurisdiction, which we expect they will, as, hypothetically, we would if the tables were reversed. If for some unforeseen reason the London court declines to entertain jurisdiction, the terms of the conditional dismissal will permit the plaintiff to proceed to trial in the Southern District.

Based upon this review of the public and private interest factors identified in *Gilbert,* and respecting the broad discretion traditionally afforded trial court decisions in forum non conveniens matters,[29] we find that the dismissal was proper. Defendant's interests in defending this suit in a forum with greater accessibility to sources of proof, both witnesses and business records, and with all interested parties before it [30] substantially outweigh plaintiffs' interest in retaining jurisdiction in their choice of forum.

We recognize that the analysis approved by our opinion today may alter the posture of the traditional motion to dismiss for forum non conveniens in *in rem* admiralty actions. The *Motor Distributors* line of cases had threatened to establish the various interests in the *in rem* nature of the proceeding as a collection of factors creating a rule mandating jurisdiction absent injustice. Yet, we have demonstrated that an effective conditional dismissal nullifies the interests which justified this rule.[31] We

**29.** Over a century ago, in *The Belgenland,* the Supreme Court announced a standard of review that retains validity today:

> The plaintiffs must show that the judge has exercised his discretion on wrong principles, or that he has acted so differently from the view which the court of appeal holds, that they are justified in saying he has exercised it wrongly.

114 U.S. at 368, 5 S.Ct. at 866 (citing an English case, *The Leon XIII,* 8 Prob.Div. 121); *see Gilbert,* 330 U.S. 508, 67 S.Ct. at 843. The high degree of discretion established in the *The Belgenland* has been affirmed repeatedly by the Supreme Court and by this circuit in the modern era. *Piper,* 454 U.S. at 257, 102 S.Ct. at 266 ("clear abuse of discretion"). An appellate court may reverse a district court's motion to dismiss based on forum non conveniens only if its action constituted a clear abuse of discretion. *Vaz Borralho v. Keydril Co.,* 696 F.2d 379, 384–85 (5th Cir.1983); *Chiazor,* 648 F.2d at 1017; *Motor Distributors,* 239 F.2d at 466.

Although the trial courts are afforded broad discretion in forum non conveniens decisions, this discretion must not be without limit. In the language of Justice Cardozo, the courts must avoid the "judicial impressionism" resulting from unrestrained discretion and strive for "discretion informed by tradition, methodized by analogy, disciplined by system." Cardozo, The Nature of the Judicial Process, 138–41 (1921).

**30.** The Supreme Court reached the same conclusion in *Piper,* where it ordered a dismissal in part because "[i]t would be far more convenient … to resolve all claims in one trial."

454 U.S. at 259, 102 S.Ct. at 267. It is not possible to determine from the record in the present case how far the Lloyd action has progressed at this date. Yet, even if that matter has reached judgment, defendant retains an interest in defending this suit before the same tribunal. An inconsistent decision will less likely be rendered where judicial rules analogous to res judicata and collateral estoppel may be asserted.

**31.** The value of the conditional dismissal has been recognized previously by several panels in this circuit, each of which has provided conditions carefully tailored to the circumstances of the case. *Fajardo v. Tidewater, Inc.,* 707 F.2d 858, 861 (5th Cir.1983); *DeOliveira v. Delta Marine Drilling Co.,* 707 F.2d 843, 846–47 (5th Cir.1983); *Constructora Spilimerg, C.A. v. Mitsubishi Aircraft,* 700 F.2d 225 (5th Cir.1983); *Bailey v. Dolphin Intern., Inc.,* No. 82–2060, slip op. 2528, 2541–42, 697 F.2d 1268, 1279–80 (5th Cir.1983); *Vaz Borralho,* 696 F.2d at 394–95; *Zekic v. Reading & Bates Drilling Co.,* 680 F.2d 1107, 1108–09 (5th Cir.1982) (per curiam). Without specifically approving the technique, we suggest that under certain circumstances a judicial stay, pending defendant's satisfying specific conditions, may accomplish the same goals as a conditional dismissal while placing less of a burden on plaintiff to reinstitute his proceeding upon defendant's default.

By approving the conditional dismissal in the forum non conveniens context, we respect the Supreme Court's advice that courts must "retain flexibility" in fashioning forum non conveniens dismissals. *Piper,* 454 U.S. at 249, 102 S.Ct. at 262.

believe that by giving approval to the conditional dismissal we are respecting the interests elucidated by prior courts in both the *Gilbert* and the *Motor Distributors* line of cases, and, at the same time, we are sanctioning a device which will encourage more efficient litigation of such claims.

When a dispute arises, parties should be encouraged to seek judicial resolution in the most convenient forum, respecting the various public and private interests outlined in *Gilbert.* Nevertheless, the necessity of seizing an oceangoing vessel may force a plaintiff to institute an action far from the location of the public and private contacts to the dispute.[32] The availability of *in rem* jurisdiction, however, need not compel trial in the forum where the vessel is seized. If the court is satisfied that there exists an alternative forum with substantially more contacts to the dispute, and that this forum is adequate and available to plaintiff, the court may dismiss on forum non conveniens grounds. Trial in the inconvenient forum may be avoided under these conditions. There is nothing new in this; it is merely a restatement of the general description of forum non conveniens found in the *Gilbert* opinion.

We take special care to confirm that the rule long respected by admiralty courts, permitting parties to seize the defendant ship where found, is preserved by today's decision. The validity of *in rem* jurisdiction has never been and is not today questioned by this court; the conditions under which vessels may be seized *in rem* in this jurisdiction are unaltered. In the cases where dismissal is appropriate—and the conditional dismissal may increase the number of these cases—our courts will have provided plaintiffs with a "net," in the form of an *in rem* action, to catch defendant vessels where they can be found. This procedure preserves the interests in *in rem* jurisdiction so

highly regarded by our *Motor Distributors* line of cases.

By protecting these interests, we foresee the easy accommodation of today's decision by the practice of private litigants. The threat of *in rem* jurisdiction should be sufficient in most cases to induce defendants to submit to a convenient forum for trial. In the unfortunate case where a defendant hopes to avoid jurisdiction altogether and then, after having its vessel "caught" *in rem* in one forum desires a dismissal, this transfer will be granted only if the defendant overcomes the substantial burden imposed on him by the forum non conveniens analysis. Plaintiff may select for trial any of the forums which are roughly equal in convenience to any other available forum.

When a dismissal is granted, however, the inconvenience to plaintiff will be minimal. At worst, plaintiffs will be forced to travel to one forum to file and perfect an *in rem* action against the defendant vessel only to have the action transferred to an alternative forum. The expense of reaching the defendant ship in the first forum should not be substantially more than that necessary to seize the vessel in the port of the more convenient forum, if it had been there to be seized in the first place. The process of perfecting *in rem* jurisdiction in admiralty should not differ greatly between the major ports of the world.

Based on what we hope is an exhaustive, and what we know to have been an exhausting, review of the relevant forum non conveniens law, we affirm the dismissal of plaintiff's *in rem* action. This result is permitted only by the conditional nature of the dismissal. We are convinced that the interests favoring trial in the London court substantially outweigh those in favor of retaining jurisdiction. The conditions of the dis-

---

**32.** The privilege of seizing vessels where found particularly should not be used by plaintiffs to time the *in rem* seizure in the port of a forum with favorable law. If this technique forces trial away from a substantially more convenient available alternative forum, it unfairly disadvantages defendants and represents forum shopping in its most invidious form.

We specifically do not intimate, however, that plaintiffs in the present action selected the Southern District of Texas solely to obtain more favorable law. In fact, the record suggests that without *in rem* jurisdiction in this country, it may have been impossible to obtain jurisdiction over the defendant vessel in England. The record indicates that the M/V Tel Aviv was not present to be served in England.

missal also satisfy us that plaintiff will find the London court to be an adequate and available alternative forum. If, however, defendant has not within sixty days from the effective date of this decision submitted to the jurisdiction of the London court and posted security equivalent to that on file in the Southern District, the dismissal shall be vacated upon petition of the plaintiff. In this event, the parties shall proceed to trial in the Southern District.

AFFIRMED.