**DEL MONTE CORPORATION, a corporation, Plaintiff,**

v.

**EVERETT STEAMSHIP CORPORATION, S/A, a corporation, and Everett Orient Line, a corporation, SS PETEEVERETT, her engines, tackle, apparel, furniture, etc., and SS ROSSEVERETT, her engines, tackle, apparel, furniture, etc., Defendants.**

**No. C–73–1485 RFP.**

United States District Court, N. D. California.

Nov. 14, 1973.

---

W. R. Buxton, Pillsbury, Madison & Sutro, San Francisco, Cal., for plaintiff.

Francis L. Tetreault, Graham & James, San Francisco, Cal., for defendants.

## ORDER

PECKHAM, District Judge.

Plaintiff sues defendants on contract for alleged damage to cargoes of bananas carried by defendants from ports in the Philippines to ports in Japan. Plaintiff, who brings this action as the assignee of the consignee of the cargoes, invokes the admiralty and maritime jurisdiction of this court.

Defendant now moves for dismissal of the action pursuant to Rule 12(b) of the Federal Rules of Civil Procedure on the grounds that this court does not have personal jurisdiction over defendants; that this court should invoke the doctrine of forum non conveniens; and that plaintiff's complaint fails to state a claim upon which relief can be granted. The three possible grounds for dismissal will be considered seriatim.

## FACTS

Plaintiff Del Monte Corporation is incorporated in New York and has its principal place of business in California. Defendant Everett Steamship Corporation is incorporated in Panama and has its principal place of business in Yokohama, Japan. Defendant Everett Orient Line, Inc. is incorporated in Liberia and operates vessels of Liberian registry in the Far East.

In December, 1971, plaintiff Del Monte Corporation sold to Fugi Fruits Co., Ltd., a Japanese corporation, a quantity of bananas priced at $41,231.52. In January, 1972, the two corporations transacted for the sale and purchase of additional bananas priced at $38,433.98. Plaintiff delivered the cargoes of bananas to defendant shipowners at ports in the Philippines for shipment to the purchasing corporation in Japan. Defendants shipped the cargoes on the steamships "Peteeverett" and "Rosseverett."

In January, 1972, the "Peteeverett" and the "Rosseverett" arrived, respectively, at Osaka, Japan and Yokohama, Japan. Japanese Quarantine Officials at both ports refused to allow the cargoes to be unloaded—allegedly due to the unacceptably high percentage of overripened fruit.

Plaintiff Del Monte Corporation is the assignee of the claims, causes of action, and rights which Fugi Fruits Co., Ltd., the consignee of the cargoes, may have against the defendants.

## DISCUSSION

### 1. Personal Jurisdiction

Defendants, noting that they are foreign corporations with few contacts with California, argue that this court lacks personal jurisdiction and, therefore, must dismiss the action.

■ California Code of Civil Procedure § 410.10 provides for personal jurisdiction "on any basis not inconsistent with the Constitution of this state or of the United States." This section indicates "an intent to exercise the broadest possible jurisdiction" consistent with the due process clause of the federal Constitution. *Michigan National Bank v. Superior Court*, 23 Cal.App.3d 1, 6, 99 Cal. Rptr. 823, 826 (1972). This court must determine its extra-territorial personal jurisdiction under Rule 4(e) of the Federal Rules of Civil Procedure by applying the California long-arm statute within its constitutional limits. "The constitutional perimeters of this jurisdiction are found in the decisions of the United State Supreme Court." *Michigan National Bank v. Superior Court, supra* at 6, 99 Cal.Rptr. at 826.

*International Shoe Co. v. State of Washington*, 326 U.S. 310, 316–17, 66 S.Ct. 154, 158, 90 L.Ed 95 (1945), provides the basic definition for determining the appropriateness of personal jurisdiction over a foreign corporation:

> . . . due process requires only that in order to subject a defendant to a judgment in personam, if he be not

present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'

[citations omitted]

*McGee v. International Life Insurance Company*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), reinforced the *International Shoe* doctrine, extending its application to a case in which the defendant merely solicited the business of a California resident.

■ *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), represents the Supreme Court's limitation of the liberal approach of both *International Shoe* and *McGee* to the definition of personal jurisdiction. The court, in denying a Florida court's assertion of jurisdiction over a Delaware trust account, stated that:

> . . . it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws. 357 U.S. at 253, 78 S.Ct. at 1240.

Courts, applying this standard, assert personal jurisdiction if a plaintiff establishes at least one of two alternative sets of jurisdictional facts. As one alternative, the plaintiff may prove that the particular cause of action arises out of or is connected with the defendant's activity within the forum. "It is sufficient for purposes of due process that the suit [is] based on a contact which had substantial connection with that State." *McGee v. International Life Insurance Company*, *supra* 355 U.S. at 223, 78 S.Ct. at 201. As the other alternative, the plaintiff may prove that the defendant engages in such extensive activity within the state as to justify a state court's jurisdiction over a cause of action not related to that activity. *Fisher Governor Co. v. Superior Court*, 53 Cal.2d 222, 225, 1 Cal.Rptr. 1, 347 P.2d 1 (1959). "Once

it is established that the defendant has engaged in activity of the requisite quality and nature in the forum state . . . the propriety of an assumption of jurisdiction depends upon a balancing of the inconvenience to the defendant in having to defend itself in the forum state against both the interest of the plaintiff in suing locally and the interrelated interest of the state in assuming jurisdiction." *Buckeye Boiler Co. v. Superior Court of Los Angeles County*, 71 Cal.2d 893, 899, 80 Cal.Rptr. 113, 118, 458 P.2d 57, 62 (1969).

■ In the present case, plaintiff argues that the presence of George P. Bradford, an officer of the defendant corporations, within this judicial district satisfies the "minimum contacts" requirement articulated in the Supreme Court decisions listed *supra*. The affidavit of Bradford, which is attached to defendants' motions, states:

> That he is President of G. P. Bradford, Inc., a California corporation, with its only office at San Mateo, California. G. P. Bradford, Inc., with its total staff of less than ten employees, provides the personal office used . . . in his capacity as a director and principal officer of Everett Steamship Corporation, S/A with respect to the internal communications and internal activities of that company.

Plaintiff notes that the San Mateo office is advertised as the agency office for Everett Steamship Corporation in the San Francisco Pacific Telephone directory.

Plaintiff, of course, bears the burden of proof in establishing that this court has personal jurisdiction over defendants. *E. g., Phillips v. Hooker Chemical Corporation*, 375 F.2d 189, 192 (5th Cir. 1967). Plaintiff has not proved that its present cause of action arises out of or is connected with defendants' activity within this state. Conceivably, Del Monte may have contracted with Everett Steamship for transport of the cargoes through the San Mateo office of George

Bradford. Proof of the transactions' being initiated in California obviously would provide substantial support for a finding of personal jurisdiction. *Cf. McGee v. International Life Insurance Company, supra.* However, plaintiff's failure to offer any such proof leaves its shipping contracts as commercial events centered in the Far East. Also, plaintiff has not established that defendants engage in substantial commercial activity in this state which might justify this court's exercising personal jurisdiction over a cause of action not related to the activity. See, *e. g., Empire Steel Corp. v. Superior Court,* 56 Cal.2d 823, 17 Cal. Rptr. 150, 366 P.2d 502 (1961). Plaintiff's quotation of the Bradford affidavit and citation to the San Francisco telephone directory listing indicates that defendants enjoy the business advantage of having an executive officer residing and working in this state. However, this proof falls short of the showing that courts usually require to establish personal jurisdiction over a non-resident corporation. Compare *Jeter v. Austin Trailer Equipment Co.,* 122 Cal.App.2d 376, 265 P.2d 130 (1954) with *Gill v. Surgitool Incorporated,* 256 Cal.App.2d 583, 64 Cal.Rptr. 207 (1967). Plaintiff's documentation, to borrow the words of a landmark California decision, "fails to focus on economic reality rather than the outward form of business transactions and is disapproved." *Buckeye Boiler Co. v. Superior Court of Los Angeles County, supra,* 71 Cal.2d at 903, 80 Cal.Rptr. at 121, 458 P.2d at 65.

## 2. Forum Non Conveniens

Defendants also argue that this court should dismiss plaintiff's action on the ground of forum non conveniens.

 This court in actions based on its admiralty jurisdiction can exercise its discretionary power under the doctrine of forum non conveniens to refuse to retain jurisdiction. See generally, *Canada Malting Co. v. Paterson Steamships,* 285 U.S. 413, 418, 52 S.Ct. 413, 76 L.Ed. 837 (1932). This grant of discretion, as defined by Supreme Court decisions, allows this court to dismiss an admiralty action "not arbitrarily or willfully, but with regard to what is right and equitable under the circumstances and the law." *Langnes v. Green,* 282 U.S. 531, 541, 51 S.Ct. 243, 247, 75 L.Ed. 520 (1931). As the pivotal determination, this court must decide whether the retention of jurisdiction would best serve the convenience of the parties and the ends of justice. *E. g., Sherkat Tazamoni Auto Internash v. Hellenic Lines, Limited,* 277 F.Supp. 462, 463 (S.D.N.Y. 1967).

In reaching its determination, this court may consider, inter alia, the plaintiff's choice of forum; the status of the parties; the convenience of parties and witnesses; access to sources of proof; and the possibility of difficulty in the application of foreign law. See generally, *Mobil Tankers Company v. Mene Grande Oil Company,* 363 F.2d 611, 613 (3rd Cir. 1965). *Cf. Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1941). The burden of proof falls on the party seeking to have the district court decline jurisdiction. *Transomnia G.m.b.H. v. M/S Toryu,* 311 F. Supp. 751, 752 (S.D.N.Y.1970).

Defendants list several arguments, based on the above criteria, in support of this court's invoking the doctrine of forum non conveniens. First, they emphasize that this case involves foreign corporations with few connections with the United States. Defendant corporations are incorporated in and primarily engage in commercial activity outside of the United States. Del Monte International, Inc., the owner and shipper of the cargoes is a Panama corporation with its principal place of business in Brussels. Fugi Fruits Co., Ltd., the purchaser of the cargoes whose rights plaintiff asserts as an assignee, is a Japanese trading corporation. Second, defendants note that the transactions in dispute occurred entirely in the Far East. The shipment of the bananas originated in the Philippines and terminated in Japan. Defend-

ants contend that all individuals who might be called as witnesses, including the Japanese Quarantine Officials, reside in the Far East. As a result, the convenience of the parties and the witnesses favors locating the trial in a judicial forum outside of this country. Third, defendants emphasize that the action will be governed by foreign law.

 Plaintiff, in response to defendants' arguments, stresses its American incorporation, noting that federal courts exhibit a special solicitude for resident plaintiffs seeking to maintain admiralty actions in home forums. See *Swift and Co. Packers v. Compania Colombiana Del Caribe*, 339 U.S. 684, 70 S.Ct. 861, 94 L.Ed. 1206 (1950). Clearly courts are hesitant to decline jurisdiction to a United States citizen suing in his own right. See *Frazer v. Saudades*, 67 F.Supp. 820 (E.D.Pa.1946). However, federal courts "do not regard the mere fact of American nationality as an entitlement of right to the retention of jurisdiction by United States admiralty courts as against a foreign forum under all circumstances." *States Marine Lines, Inc. v. The M/V Kokei Maru*, 180 F. Supp. 255, 257 (N.D.Cal.1960). Also, decisions concerning admiralty actions note that " 'a subrogee stands in the shoes of the subrogor and has no better rights than those possessed by the latter.' " *Atlantic Mutual Insurance Co. v. Poseidon Schiffahrt*, 206 F.Supp. 15, 19 (N.D.Ill.1962), quoting *Berkeley v. United States*, 276 F.2d 9, 12 (Court of Claims 1960). Plaintiff Del Monte, as the assignee of a consignee, bases its action on the rights of a Japanese corporation. Thus, this court in determining the appropriateness of this forum need not give especial weight to plaintiff's place of incorporation. *United States Merchants' and Shippers' Ins. Co. v. A/S Den Norske Afrika Og Australie Line*, 65 F.2d 392 (2nd Cir. 1933).

 In sum, the factors relevant to the determination of the appropriateness of this forum favor, on balance, this court's declining jurisdiction. The locale of the events in controversy, the residences of individuals who presumably would testify at a trial, and the probability that foreign law will govern resolution of the dispute suggest that this court should dismiss the action and allow plaintiff to seek relief before an appropriate foreign tribunal. *Cf. Allianz Versicherungs-Aktiengesell v. S. S. Eskisehir*, 334 F.Supp. 1225 (S.D.N.Y.1971). This approach comports with the tendency of federal courts to disfavor the expenditure of judicial resources which mainly involve foreign corporations and concern events occurring outside the United States. *E. g., Camarias v. M/V Lady Era*, 318 F.Supp. 379 (E.D.Va. 1969). See *Industria E. Comercio de Minerios, S. A. v. Nova Genuesis Societa per Azioni per L'Industria et Il Commercio Maritimo*, 310 F.2d 811, 815 (4th Cir. 1962). Also, dismissal of this action on the ground of forum non conveniens can be made subject to specified conditions which safeguard plaintiff's legitimate interests. *E. g., Sherkat Tazamoni Auto Internash v. Hellenic Lines, Limited, supra* at 464. See also *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972).

 The above discussion, it should be noted, is relevant to this court's deciding whether invocation of personal jurisdiction is proper. As mentioned *supra, Buckeye Boiler v. Superior Court of Los Angeles* reasons that courts, in determining the issue of personal jurisdiction, must examine the same factors as are relevant to a determination of the applicability of the doctrine of forum non conveniens. See *International Shoe Co. v State of Washington, supra* 326 U.S. at 319, 66 S.Ct. 154. Thus, the factors which argue in favor of dismissal of this action on the ground of forum non conveniens also mitigates against this court's asserting personal jurisdiction.

**244**

### 3. Failure to State a Claim

Defendants also contend that this court should dismiss plaintiff's action on the ground that plaintiff fails to state a claim upon which relief can be granted. Specifically, defendants claim that the bills of lading concerning the cargoes, when considered in light of the relevant statute of limitations, preclude plaintiff from filing an action more than a year after the delivery of the cargoes.

Plaintiff, in response, questions the applicability of the provisions of the bills of lading, noting that the copies of the bills the plaintiff holds are blank on one side. In addition, plaintiff maintains that the Philippines statute of limitations section relating to actions for the conversion of goods allows for plaintiff's present action even if the Japanese statute of limitations, which apparently bars actions of this type after one year, does not. Plaintiff cites this court to a Philippines Supreme Court decision.

The parties' factual disagreement about the provisions of the bills of lading precludes a determination of the validity of defendants' attack on plaintiff's complaint. However, the arguments that the parties advance do indicate, at least indirectly, that adjudication of the controversy in this forum would necessarily involve difficult questions concerning the application of foreign law. Presumably, a Far East forum would be in a better position to resolve the dispute.

### CONCLUSION

In sum, the factors relevant to the determination of both this court's personal jurisdiction over defendants and the applicability of the doctrine of forum non conveniens favor this court's declining jurisdiction—at least, as long as plaintiff can maintain the action in another forum more convenient for the adjudication of the dispute.

Accordingly, defendants' motion to dismiss is granted on the condition that defendants will submit to the jurisdiction of either the courts of the Philippines or the courts of Japan over this dispute without asserting any defenses which depend on the delay occasioned by the filing of this action, provided that plaintiff promptly invokes such jurisdiction.

So ordered.