PHILIPPINE PACKING CORPORA-
TION, a corporation,
Plaintiff-Appellant,

v.

MARITIME COMPANY OF the PHIL-
IPPINES et al., VESSEL DYNAMIC
VENTURE, her hull, machinery, tack-
le and apparel, Defendants-Appellees.

PHILIPPINE PACKING CORPORA-
TION, a corporation,
Plaintiff-Appellant,

v.

MARITIME COMPANY OF the PHIL-
IPPINES et al., VESSEL TAGALOG,
her hull, machinery, tackle and appar-
el, Defendants-Appellees.

Nos. 74–1291, 74–1653.

United States Court of Appeals,
Ninth Circuit.

July 31, 1975.

Stephen McReavy (argued), San Francisco, Cal., for appellant.

Graydon S. Staring (argued), San Francisco, Cal., for appellee.

OPINION

Before KOELSCH, CARTER and GOODWIN, Circuit Judges.

PER CURIAM:

In these separate admiralty appeals involving similar issues, plaintiff Philippine Packing Corporation (PPC) challenges the district court's orders dismissing PPC's respective complaints for loss of and damage to cargo under the doctrine of *forum non conveniens.* We affirm.

In each suit, both the plaintiff and defendant are Philippine corporations; the carriage of cargo was a direct shipment originating in Japan and destined for a port in the Philippines;[1] and the contract of carriage—a bill of lading issued in Japan—provided that its terms be governed by Japanese law supplemented, where appropriate, by the law of the Philippines. In one suit, the vessel chartered by defendant Maritime Company of the Philippines was of Panamanian flag and registry; in the other, the vessel so chartered was of Philippine flag and registry. And though the vessel in each suit was named as a defendant in the complaint, it was not served or otherwise brought under the jurisdiction of the district court; hence *in rem* jurisdiction never attached.

In *Canada Malting Co. v. Paterson Steamships,* 285 U.S. 413, 52 S.Ct. 413, 76 L.Ed. 837 (1932), Mr. Justice Brandeis, speaking for the Court, stated the general rule as follows:

> "[I]n a suit in admiralty between foreigners it is ordinarily within the discretion of the District Court to refuse to retain jurisdiction, and . . the exercise of its discretion will not be disturbed unless abused."

285 U.S. at 418, 52 S.Ct. at 414. *See also Swift & Company Packers v. Compania Colombiana del Caribe,* 339 U.S. 684, 697, 70 S.Ct. 861, 94 L.Ed. 1206 (1950). And in *Langnes v. Green,* 282 U.S. 531, 541, 51 S.Ct. 243, 247, 75 L.Ed. 520 (1931), relied on in *Canada Malting,* the Court defined the term "discretion" as follows:

> "The term 'discretion' denotes the absence of a hard and fast rule. *The*

*Styria v. Morgan,* 186 U.S. 1, 9 [22 S.Ct. 731, 46 L.Ed. 1027]. When invoked as a guide to judicial action it means a sound discretion, that is to say, a discretion exercised not arbitrarily or willfully, but with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result."

True enough, the burden of making a showing sufficient to justify the district court's refusal to retain jurisdiction rests on the moving party. *See, e. g., Mobil Tankers Co. v. Mene Grande Oil Co.,* 363 F.2d 611, 613 (3d Cir. 1965); *Del Monte Corp. v. Everett S. S. Corp.,* 1974 A.M.C. 1880, 1885 (N.D.Cal.1974). *Cf. Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1941). But on these records, we are not prepared to say that discretion was abused.

In this connection, we reject PPC's argument that the denial of each of the motions to dismiss was manifested because, in each case, three of PPC's witnesses—all of whom reside in this country and whose testimony is primarily of an "expert" nature—would be unable to attend, or seriously inconvenienced by, a trial in the courts of Japan or the Philippines. Without denigrating the probable value of the testimony of these witnesses, we note that a number of them traveled to the Far East to conduct inspections of the vessel and/or the allegedly damaged cargo; they presumably could do so again. Moreover, the dismissals here were expressly conditioned on (1) the defendant's agreement to submit to the jurisdiction of the courts of the Philippines or Japan without asserting any defenses based on laches or any statute of limitations, provided the plaintiff promptly invokes such jurisdiction, and (2) the defendant's consent to the taking of the depositions of these witnesses, with the understanding that such depositions may be used by either party in

1. In No. 74–1653, the cargo apparently was not delivered at its intended destination because the vessel was stranded, *en route,* off Okinawa.

such foreign trials. Should any of the witnesses be unable to attend such trials—and it is far from clear that any of them will be so affected—the relevant deposition could be used in that witness' absence. Under the circumstances, we do not consider the convenience of PPC's witnesses to be of controlling weight, particularly in view of the substantial likelihood that material witnesses to the loading and handling of the cargo and conditions on the voyage, including the crew members of the foreign vessels, would be more easily accessible to courts situated in the Far East.

Nor are we persuaded that PPC's argument that a different result is compelled by *Poseidon Schiffahrt, G.M.B.H. v. M/S Netuno*, 474 F.2d 203 (5th Cir. 1973). There the Fifth Circuit, in an *in rem* libel involving foreign vessels of different nationalities, held that a district court should exercise its jurisdiction "unless the defendant can establish that to do so would work an injustice." 474 F.2d at 204. In *Netuno*, the court paid lip service to the *Canada Malting* proposition that the decision to decline jurisdiction is a matter addressed to the district court's sound discretion, *see* 474 F.2d at 204 n.3, but relied heavily on *The Belgenland*, 114 U.S. 355, 366–367, 5 S.Ct. 860, 866, 29 L.Ed. 152 (1885), for the rule that a district court's jurisdiction should be exercised "unless special circumstances exist to show that justice would ·be better subserved by declining it." If any real distinction exists between these approaches, we think the Court put the rule of *The Belgenland* into clear perspective in its subsequent decision in *Canada Malting*, where it discussed the earlier case and then went on to recognize the district court's "*unqualified* discretion to decline jurisdiction in suits in admiralty between foreigners," *see* 285 U.S. at 421, 52 S.Ct. at 415 (emphasis supplied). Moreover, *Netuno*, unlike the cases before us, was *in rem* (the vessel had actually been seized in the jurisdiction)[2] and involved a collision in the waters of Lake Huron.[3] *Compare Sherkat Tazamoni Auto Internash v. Hellenic Lines, Ltd.*, 277 F.Supp. 462 (S.D.N.Y.1967), dismissed under circumstances similar to those involved here. *Accord, Paper Operations Consultants International, Ltd. v. S. S. Hong Kong Amber*, 513 F.2d 667 (9th Cir. 1975). *See also Garis v. Compania Maritima San Basilio*, 386 F.2d 155 (2d Cir. 1967); *Transomnia G.m.b.H. v. M/S Toryu*, 311 F.Supp. 751 (S.D.N.Y.1970); *Home Insurance Co. v. S. S. Ciudad de Cumana*, 1975 A.M.C. 355 (S.D.N.Y.1974).[4]

Affirmed.

---

**2.** We note that *The Belgenland*, like *Netuno*, was a suit *in rem*, while *Canada Malting*, like the instant suits, was *in personam*.

**3.** In *Netuno*, a substantial issue on the merits was whether the collision occurred in United States or Canadian waters. *See* 474 F.2d at 203 n.1.

**4.** *Deutsche Rhodiaceta, AG v. M/V Mississippi*, 1974 A.M.C. 236 (W.D.Wash. 1974), relied on by PPC, is not to the contrary. While that case, like those before us, was a suit in admiralty between foreigners, there the district court's opinion indicated that "[t]he contract of carriage . . . [was] governed by the United States Carriage of Goods by Sea Act, 1936 (COGSA) 46 U.S.Code, Sec. 1300 *et seq.*" 1974 A.M.C. at 236. Hence that case presumably involved either "the carriage of goods by sea to or from ports of the United States," *see* § 1 of COGSA, 46 U.S.C. § 1300, or an agreement in the contract of carriage to be bound by the United States COGSA. Neither of these factors is present in the cases before us. Moreover, while it is uncertain from the district court's opinion in *Deutsche Rhodiaceta* whether that suit was *in rem*, the caption and the district court's heavy reliance on *Netuno* strongly suggests that it was. It is not before us, and we do not decide, whether the district court in *Deutsche Rhodiaceta* erred in concluding, under the circumstances of that case, that it was required to retain jurisdiction. *Compare Sherkat Tazamoni Auto Internash v. Hellenic Lines, Ltd.*, 277 F.Supp. 462 (S.D.N.Y. 1967).