**VEBA–CHEMIE A.G., Plaintiff-Appellant,**

v.

**M/V GETAFIX, her engines, boilers, etc., in rem, and Getafix Shipping Corp., in personam, Defendants-Appellees.**

No. 82–3278.

United States Court of Appeals, Fifth Circuit.

Aug. 15, 1983.

Montgomery, Barnett, Brown & Read, Machale A. Miller, New Orleans, La., for plaintiff-appellant.

Chaffe, McCall, Phillips, Toler & Sarpy, Kenneth W. Jacques, Kenneth J. Servay, New Orleans, La., for defendants-appellees.

Before GOLDBERG, GEE and RANDALL, Circuit Judges.

1. The Netherlands Antilles is a sovereign nation located in the Caribbean with a legal sys-

GEE, Circuit Judge:

With this case we enter the same legal setting, now with a different cast of characters and a new plot, as that presented by another case decided by this court today, *Pusat v. M/V Tel Aviv,* 711 F.2d 1231 (5th Cir.1983). Once again the dispute is between parties of different foreign nationalities, it concerns a maritime accident occurring on the high seas, and the sole relevant contact with the United States forum was the presence of the defendant ship in one of our ports more than a year after the collision. Again the district court dismissed on forum non conveniens grounds, effectively conditioning the dismissal upon the defendant's submission to the jurisdiction of a specific alternative forum. Although we apply the same legal analysis and reach the same result as we did in *Pusat,* affirming the dismissal, we do so only after a careful and independent review of the decision below.

### Facts

The M/V Getafix is a Liberian flagship owned by Getafix Corporation of the Netherlands Antilles and managed by Van Nievelt, Goodriaan & Company B.V. of The Netherlands.[1] On November 27, 1978, the M/V Getafix took on a cargo of crude oil in Ardjuna, Indonesia, for delivery to Rotterdam, The Netherlands. The cargo was owned by Veba-Chemie, a West German corporation.

During passage and while on the high seas off the coast of Portugal, a hole developed in the M/V Getafix's main seawater crossoverline, flooding the engine room and disabling the vessel. At the request of its master, the vessel was rescued by a Dutch salvage company whose vessel towed the M/V Getafix to Vigo, Spain, and then on to Rotterdam to unload the cargo. A salvage award of $600,000 was agreed upon by the vessel and the cargo owner and was paid to the salvor. $480,000 of this sum was contributed by the cargo owner, Veba-Chemie.

Based on allegations that the salvage payment resulted from the unseaworthy

tem separate and distinct from The Netherlands, which is located in northern Europe.

condition of the vessel and that the cargo ultimately delivered in Rotterdam was less than that delivered to the vessel in Ardjuna, Veba-Chemie sued the M/V Getafix, *in rem,* and the vessel's owners, *in personam,* for the value of its payment to the salvor and for the value of its lost cargo. This suit was instituted in March, 1980, in the Eastern District of Louisiana when the M/V Getafix called on the port of New Orleans. In lieu of seizing the vessel, Veba-Chemie accepted a letter of undertaking issued by the M/V Getafix's liability underwriters agreeing to appear and satisfy judgment on behalf of the vessel and its owner.

In effect granting defendant's motion to dismiss on the basis of forum non conveniens, the district court stayed the action for ninety days pending plaintiff's filing a suit in and defendant's submitting to the jurisdiction of a Dutch court. Defendant also was required to waive those jurisdictional defenses that could not have been raised in the Eastern District of Louisiana.[2] Upon satisfaction of these conditions, the district court formally granted defendant's motion to dismiss.

### Discussion

■ As we demonstrate and explain in greater detail in *Pusat,* a forum non con-

veniens dismissal must be based on the finding that, when weighed against plaintiff's choice of forum, the relevant public and private interests strongly favor a specific, adequate and available alternative forum. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). Although the balancing analysis must be applied with sensitivity to the specific circumstances of each case, the analysis nevertheless applies to all forum non conveniens dismissals.

■ Appellant's first ground of appeal concerns the requirement that an alternative forum be available. Simply stated, the dispute is whether defendant's agreement to submit to the jurisdiction of the alternative forum satisfies the availability, or the two forum, requirement. Appellant asserts that it does not. Although as a condition to the dismissal defendant has agreed to submit to Dutch jurisdiction, appellant nevertheless urges that we reverse the dismissal because the Dutch forum is not one in which "defendant initially could have been sued."[3] We resist this arbitrary result because we find appellant's position to be an unsupported and unduly narrow reading of the availability requirement. We hold instead that defendant's submission to the jurisdiction of an alternative forum renders that forum available for the purposes of forum non conveniens analysis.[4]

2. The court's order read, in relevant part:

The Court will and hereby does ORDER that the above captioned matter shall be STAYED for 90 days pending the plaintiff filing a new suit in a Netherlands court and upon the condition that the defendant, Getafix Shipping Company, submit to the jurisdiction of the Netherlands court, waiving all defenses relating to subject matter jurisdiction, jurisdiction over the person, venue, sufficiency of process, sufficiency of service of process, statute of limitations and laches.

3. For purposes of this decision we assume that jurisdiction in the Dutch forum was not available prior to the time plaintiff instituted the present action in the Eastern District of Louisiana and that it is available now only because defendant has agreed to submit to the jurisdiction of that court. Appellees have not attempted to contradict this factual representation.

And yet we are puzzled why the presence of the M/V Getafix in Rotterdam, while unloading plaintiff's cargo, did not render that forum

available for *in rem* jurisdiction there. Plaintiff's own version of Dutch jurisdictional law, supported by the affidavit of a Dutch legal expert, provides for jurisdiction in that forum where "an arrest of property has been made within The Netherlands." Perhaps the cause of action did not arise until payment was actually made to the salvor, and perhaps this event did not occur until after the M/V Getafix left the Dutch port. We raise this issue only to dismiss it as a possible basis for our decision; our decision is based on the assumption that the jurisdiction of the Dutch courts was not available when plaintiff brought suit. Remand and further factual development would be necessary to support the contrary finding that the Dutch forum was available at some point prior to the filing of plaintiff's action below.

4. Recently, this circuit has taken precisely this position. *Vaz Borralho v. Keydrill Co.,* 696 F.2d 379, 393 (5th Cir.1983). In that case the court stated that "an agreement by a defendant to submit to the jurisdiction of the [alternative]

In the fountainhead forum non conveniens decision, the Supreme Court provided the preeminent statement of the availability requirement:

In all cases in which the doctrine of forum non conveniens comes into play, it presupposes at least two forums in which the defendant is amenable to process; the doctrine furnishes criteria for choice between them.

*Gilbert,* 330 U.S. at 506–07, 67 S.Ct. at 842. Although the precise issue of when the alternative forum must be available was not before the Court, the use of the present tense evinces the Court's understanding that the alternative forum must be one in which the defendant "is" amenable to process. A recent statement of the requirement by the Court more clearly casts it in the present tense:

At the outset of any forum non conveniens inquiry, the court must determine whether there exists an alternative forum. Ordinarily, this requirement will be satisfied when the defendant is "amenable to process" in the other jurisdiction.

*Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255 n. 22, 102 S.Ct. 252, 265 n. 22, 70 L.Ed.2d 419 (1981) (*citing Gilbert*). On a straightforward reading of this language, when defendant submits to the jurisdiction of an alternative forum, the availability requirement is satisfied because there "exists" an alternative forum in which the defendant "is" amenable to process.

■ Appellant asks us to read something more into the requirement: the alternative forum must have been available at the time plaintiff brought suit. Try as he may, appellant can not glean this reading from the historical development of the forum non conveniens doctrine. Instead, appellant urges us to apply to forum non conveniens a practice developed for transfer under the

federal "Change of Venue" statute. 28 U.S.C. § 1404(a).

In 1948, Congress enacted legislation providing for the transfer of venue to an alternative federal forum. The relevant statutory provision reads:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division *where it might have been brought.* (emphasis added)

28 U.S.C. § 1404(a). Following the "plain words" of this statute, the Supreme Court has prohibited transfers to alternative federal forums unless the suit "might have been brought" there at the time plaintiff filed his original suit. *Hoffman v. Blaski,* 363 U.S. 335, 342–43, 80 S.Ct. 1084, 1088–89, 4 L.Ed.2d 1254 (1960). Were we to apply this restriction in the forum non conveniens context, we would be compelled to reverse the dismissal in the present case; the Dutch courts were not available to plaintiff when it filed the present action.[5]

■ And yet forum non conveniens dismissals and federal venue transfers are entirely distinct schemes. The accepted and rather obvious purpose of the federal transfer statute itself demonstrates the distinction between federal transfers and forum non conveniens dismissals. The federal transfer scheme was intended to be a "federal housekeeping measure" facilitating "easy change of venue within a unified federal system." *Piper,* 454 U.S. at 253–54, 102 S.Ct. at 264–65 (citing *Van Dusen v. Barrack,* 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)). The Supreme Court has explained that Congress did not intend to affect the interpretation of the forum non conveniens doctrine when it enacted § 1404(a): "[a]lthough [§ 1404(a)] was drafted in accordance with the doctrine of forum non conveniens, it was intended to be a revision rather than a codification of the

foreign forum will satisfy the doctrine's requirement of two forums in which the defendant is amenable to process." *Id.* This particular part of that decision was dictum, however, because the court also found defendant amenable to jurisdiction in the alternative forum when the action was brought by plaintiff on grounds independent of defendant's submission

to jurisdiction there. Therefore, we acknowledge that we are not compelled to follow the language in that case. Instead, we adopt the same reading of the availability requirement because we independently are persuaded it is proper.

**5.** *See* footnote 3 *supra.*

common law." *Id.* at 253, 102 S.Ct. at 264 (citations omitted); *see Norwood v. Kirkpatrick,* 349 U.S. 29, 32, 75 S.Ct. 544, 546, 99 L.Ed. 789 (1955). After § 1404(a), therefore, the forum non conveniens doctrine remained, unaltered, to monitor dismissals when the more convenient alternative forums were outside the federal system.

Furthermore, the standard for transfer under § 1404(a) so altered the standard found in the forum non conveniens setting that it would be inappropriate to restrict available alternatives in forum non conveniens cases in the manner required by the transfer statute. The basic forum non conveniens scheme was "revised" by the federal transfer statute to give district courts "more discretion to transfer under § 1404(a) than they had to dismiss on the grounds of forum non conveniens." *Piper,* 454 U.S. at 253, 102 S.Ct. at 264. The heavy burden traditionally imposed upon defendants by the forum non conveniens doctrine—dismissal permitted only in favor of a substantially more convenient alternative—was dropped in the § 1404(a) context. In order to obtain a new federal forum, the statute requires only that the transfer be "[f]or the convenience of the parties, in the interest of justice." *See Norwood,* 349 U.S. at 32, 75 S.Ct. at 546.

In the process of lowering the barrier to dismissal, however, Congress created the "where it might have been brought" restriction to modify defendant's augmented ability to change forums. Without this, plaintiff could have found himself in any federal forum based on a finding of mere convenience. It was only in this context that the Supreme Court in *Hoffman* refused to permit a transfer because the alternative forum had not been available when plaintiff originally brought suit. And this is a very different context than that presented by the forum non conveniens doctrine. The "substantially more convenient standard" assures both that defendant will have less control in obtaining an alternative forum and that the enhanced convenience—both public and private—achieved by dismissal will justify disturbing plaintiff's choice.

The Supreme Court has squarely rejected a similar effort to apply a rule created in the § 1404(a) context to forum non conveniens dismissals. Under § 1404(a), the Supreme Court has ruled that a transfer should not result in a change in the applicable law. *Van Dusen v. Barrack,* 376 U.S. 612, 639, 84 S.Ct. 805, 820, 11 L.Ed.2d 945 (1964). The Supreme Court later reversed a Court of Appeals decision which had attempted to apply this rule in a forum non conveniens case. *Piper,* 454 U.S. at 253, 102 S.Ct. at 264. Relying on precisely the same analysis we rely on today, the Court held that § 1404(a) "reasoning is simply inapplicable to dismissals on grounds of forum non conveniens," because the fear that "forum-shopping parties would take unfair advantage of the relaxed standards for transfer [under § 1404]," simply is not present in the forum non conveniens context. *Id.* at 253–54, 102 S.Ct. at 264–65.[6]

Because of the distinct purposes and standards utilized by these two schemes, we refuse to apply to a forum non conveniens dismissal a restriction created specifically for and applied only to § 1404(a) transfers. That argument aside, we find nothing in any of the relevant case law to recommend appellant's restrictive reading of the availability requirement.[7] Instead, we are con-

---

**6.** Furthermore, the Supreme Court in *Piper* cited with apparent approval a Second Circuit decision which rejected precisely the argument we reject today. 454 U.S. at 254 n. 21, 102 S.Ct. at 265 n. 21. The Second Circuit held that the restriction on transfers found in § 1404(a) is not applicable to forum non conveniens dismissals. *Schertenleib v. Traum,* 589 F.2d 1156 (2d Cir.1978).

**7.** Appellant's reliance on *Trivoli Realty v. Interstate Circuit,* 167 F.2d 155 (5th Cir.), *cert. denied,* 334 U.S. 837, 68 S.Ct. 1494, 92 L.Ed. 1762 (1948) is misplaced. There is language in that case apparently supporting appellant's position:

> The doctrine of *forum non conveniens* furnishes the criteria for a choice between two or more forums in which the defendant is amenable to process. At least two such forums must be available to the plaintiff before the doctrine comes into play; and they shall not be dependent merely upon the will or grace of the defendant, but must be provided by law.

*Id.* at 156–157. Yet, we agree with a subsequent panel of this circuit which concluded that

vinced that an understanding of the proper function of the forum non conveniens doctrine demonstrates that availability refers only to the time of dismissal.

■ The time period during which the alternative forum is available is undoubtedly relevant to the forum non conveniens determination. Proof that the alternative forum was not available at the time plaintiff brought his action would tend to refute the claim that plaintiff's forum selection was motivated by the desire to " 'vex,' 'harass,' or 'oppress' the defendant." [8] In fact, if no alternative forum were available to plaintiff when he brought his action, it would be impossible to maintain the argument that plaintiff's selection was based on malicious intent.

And yet the *Gilbert* opinion has demonstrated that the function of forum non conveniens is far broader than merely dismissing suits where the court believes plaintiff's choice was improperly motivated. The forum non conveniens analysis, which focuses on the location and relative weight of the public and private interests, is concerned with the relative convenience and justice resulting from alternative trial locations.[9] The preeminent function of the doctrine is to assist general venue statutes in directing litigation to interested and convenient forums. *See Gilbert,* 330 U.S. at 507–08, 67 S.Ct. at 842–43.

■ With this understanding of the forum non conveniens doctrine, it is relevant only that the alternative forum be available at the time of dismissal so that plaintiff may pursue his action in what has been determined to be a substantially more convenient forum. Alternatively, if no other forum is available to plaintiff at the time of dismissal, it would be exceedingly harsh to dismiss for forum non conveniens. *See Norwood,* 349 U.S. at 32, 75 S.Ct. at 546. In the terms of the balancing analysis, the absence of any alternative forum in which plaintiff can receive an adjudication on the merits represents a strong private interest in favor of plaintiff's choice of forum.[10] The forum non conveniens analysis has never asked the courts to reconstruct and weight the relative conveniences as they existed when plaintiff brought suit. Instead, the forum non conveniens inquiry—including the convenience, availability and adequacy elements—has always been conducted in the present tense.

The importance of an available forum at the time of dismissal illustrates the inappropriateness of appellant's position that availability refers to the time at which suit was filed. In fact, to adopt appellant's position would compel us to read more into the availability requirement than is suggested in its argument before this court. In the present case, where it is conceded that the alternative forum was not available when the original action was brought, for plaintiff's purpose it is sufficient to argue that availability refers only to the time when brought. The absence of this condition would compel the retention of jurisdiction. Yet, it would be ironic at best to apply this reading of the requirement—which appellant asserts is necessary to protect plaintiffs—and to dismiss a case in which the alternative forum was available when the action was brought, but was no longer available at the time of dismissal.[11] If no

"the above quoted language is dicta." *Vaz Borralho,* 696 F.2d at 392 n. 12.

**8.** *Gilbert* suggested that such a finding would be relevant to the forum non conveniens determination. 330 U.S. at 507, 508, 67 S.Ct. at 842, 843.

**9.** The Supreme Court has commented recently "that the central focus of the forum non conveniens inquiry is convenience." *Piper,* 454 U.S. at 249, 102 S.Ct. at 262.

**10.** Perhaps if the plaintiff's plight is of his own making—for instance, if the alternative forum was no longer available at the time of dismissal as a result of the deliberate choice of an inconvenient forum—the court would be permitted to disregard this consideration and dismiss. As we have pointed out, forum non conveniens is sensitive to plaintiff's motive for choosing his forum, at least in the extreme case where his selection is designed to " 'vex,' 'harass,' or 'oppress' the defendant." *See Gilbert,* 330 U.S. at 508, 67 S.Ct. at 843. No such motive is alleged by defendant, or suggested by the record, in the present case.

**11.** This situation is particularly easy to imagine in the *in rem* context where availability of jurisdiction over the defendant is as fleeting as the passage of vessels from port to port.

alternative forum is available, defendant's motion to dismiss for forum non conveniens would have the arbitrary effect of permanently defeating a plaintiff's claim. Therefore, to protect plaintiffs' interests in the manner urged by appellant, we would have to read the two forum requirement to require that the alternative be available both at the time the action was brought and at the time of dismissal.

We are not persuaded to read so much into the language of the *Gilbert* opinion or into the commonly accepted understanding of the function of the forum non conveniens dismissal. We are convinced that when the Supreme Court held that the two forum requirement is satisfied when "the defendant is amenable to process" in an alternate forum, it meant precisely that, and nothing more. Courts need determine only that the alternative forum is available at the time of dismissal, for only this reading of the requirement respects the wording and the proper function of the availability requirement. Furthermore, we find that the conditional dismissal, by inducing defendant's submission to the jurisdiction of an alternative forum, is one particularly effective manner of assuring that the alternative forum is available.[12] In reaching this result, we point out that we have been unable to find a single federal appellate decision reaching a contrary result. We have, however, found numerous decisions approving dismissals, such as ours today, where the alternative forum is available pursuant only to defendant's submission to jurisdiction there.[13]

Having determined that the Dutch court satisfies the availability requirement, we review the district court's dismissal under the *Gilbert* balancing analysis. In so doing, we respect the high degree of discretion afforded district court decisions in forum non conveniens matters. It is settled that an appellate court may reverse a forum non conveniens decision only if it constitutes a clear abuse of discretion; where the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference. *Piper,* 454 U.S. at 257, 102 S.Ct. at 266 (*citing Gilbert,* 330 U.S. at 511–12, 67 S.Ct. at 844); *see Vaz Borralho,* 696 F.2d at 384–85.

Our review of the location and weight of the relevant public and private interests confirms the finding that they weigh strongly in favor of trial in The Netherlands. On its side of the scale, plaintiff has pointed to no specific interests favoring retention of jurisdiction. None of the parties, witnesses or sources of proof reside in the Eastern District of Louisiana, or in this country. Furthermore, the Eastern District possesses no public interest in seeing this action proceed to trial in its forum. As we demonstrate in *Pusat,* plaintiff's interest in retaining jurisdiction over the vessel is satisfied by the conditional dismissal; jurisdiction has been assured in the Dutch court. *See Pusat,* 711 F.2d at 1238–39, 1242. The only remaining interest—that of permitting the seizure of vessels in ports where they can be found—has been satisfied in this case.[14]

---

**12.** As this circuit has pointed out:

A defendant's agreement to submit to the jurisdiction of the foreign forum, along with a conditional dismissal, "obviates the need for extensive inquiry into foreign jurisdictional law since, if the foreign court refuses to take jurisdiction, 'plaintiff is still protected by the conditional nature of the dismissal.'"

*Vaz Borralho,* 696 F.2d at 392 n. 12 (*citing Calavo Growers of Cal. v. Belgium,* 632 F.2d 963, 968 (2d Cir.1980), *cert. denied,* 449 U.S. 1084, 101 S.Ct. 871, 66 L.Ed.2d 809 (1980)) (*citing Schertenleib,* 589 F.2d at 1163).

**13.** *E.g.: Piper,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419; *Mizokami Bros. of Arizona v. Mobay Chemical Corp.,* 660 F.2d 712, 719 (8th Cir.1981); *Chiazor v. Transworld Drilling Co.,*

648 F.2d 1015, 1020 (5th Cir.1981); *Pain v. United Technologies Corp.,* 637 F.2d 775, 785 (D.C.Cir.1980), *cert. denied,* 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981); *Calvo Growers of California v. Belgium,* 632 F.2d 963, 968 (D.C.Cir.1980), *cert. denied,* 449 U.S. 1084, 101 S.Ct. 871, 66 L.Ed.2d 809 (1981); *Schertenleib v. Traum,* 589 F.2d 1156, 1162–63 (2d Cir.1978); *Philippine Packing Corp. v. Maritime Co. of the Philippines,* 519 F.2d 811, 812 (9th Cir.1975); *Paper Operations Consultants International, Ltd. v. S.S. Hong Kong Amber,* 513 F.2d 667, 672–73 (9th Cir.1975); *Orgettas v. S/T Crinis,* 488 F.2d 89, 90 (4th Cir.1973).

**14.** Unlike those in *Pusat,* the conditions placed upon the dismissal in this case do not make any

The only interest which conceivably could be asserted to support the retention of jurisdiction is the negative interest of avoiding litigation in the home, and the potentially partial, forum of one of the parties. Dismissal in this case is in favor of the Dutch forum and the defendant is Dutch. Concern for this circumstance was suggested by an early Supreme Court case involving a dispute between parties of different foreign nationalities occurring on the high seas. *The Belgenland,* 114 U.S. 355, 369, 5 S.Ct. 860, 866, 29 L.Ed. 152 (1884). In that case, the Court affirmed the retention of jurisdiction, suggesting among other reasons for doing so the following consideration:

> Neither party has any peculiar claim to be judged by the municipal laws of his own country, since the case is pre-eminently one *communis juris* and can generally be more impartially and satisfactorily adjudicated by the court of a third nation having jurisdiction of the *res* or parties than it could be by the courts of either of the nations to which the litigants belong.

The language displays a disinclination to send a party to a forum foreign to him but home to his adversary. Use of the word "impartially" provides at least some evidence of this concern. Although this same concern has been echoed by a more recent decision in this circuit, *Motor Distributors v. Olaf Pedersen's Rederi A/S,* 239 F.2d 463, 467 (5th Cir.1956), we do not understand it to have been pronounced as either a categorical bar to a forum non conveniens dismissal or as applicable without qualification in every case. Instead we read it, as we have been advised to read each and every interest in the forum non conveniens analysis,[15] as an interest whose weight and relation to the ultimate result must be gauged independently in each case.

■ Experience has taught us that under certain conditions forums will extend unfair judicial treatment to the commercial or property interests of those beyond their borders. This is particularly evident between nations at war or those with hostile economic and political ideologies. Yet we find these conditions to be the exception, and we will assume, unless presented with evidence to the contrary, that national tribunals will treat evenhandedly resident and nonresident parties.

In the present case, we are aware of no reason to suspect that this West German plaintiff will receive unjust treatment from the Dutch courts, either because it will be a foreign party or because it is suing a Dutch defendant. The plaintiff has evinced no objection to the Dutch forum on this ground. In addition, biased treatment of foreign parties has not proved to be a major concern within the modern international commercial community, of which The Netherlands and West Germany are fine examples. Although admittedly a difficult matter to gauge in the abstract, we do not in this case attribute any significant weight to this negative interest, which in certain circumstances may weigh against dismissal in favor of a particular alternative forum.

■ Absent any specific interests favoring retention of jurisdiction, plaintiff retains the general presumption in favor of his choice of forum. In this case, this presumption has been overcome by the numerous contacts between the dispute and The Netherlands. On the scale, these interests strongly outweigh the presumption favoring plaintiff's choice.

At trial, the trier of fact will need to determine what responsibility the owners of the M/V Getafix had for the flooding of the vessel's engine room and what portion of Veba-Chemie's cargo, if any, was lost at sea. The principal testimony at trial therefore will come from the crew of the M/V Getafix, a Dutch vessel,[16] and the employ-

---

provision for the defendant to provide security in the Dutch forum equivalent in amount to that guaranteed in the Eastern District of Louisiana. Because plaintiff-appellant has presented no objection to this potential deficiency, we assume that the satisfaction of judgment against the Dutch defendant will be at least as easy to obtain in the Dutch courts as it would have been in the Eastern District of Louisiana.

15. *See Gilbert,* 330 U.S. at 508, 67 S.Ct. at 843.

16. At the time of the accident, nearly five years ago, the officers of the M/V Getafix were Dutch and the crew was principally Maltese. Nevertheless, as we note in *Pusat,* it is difficult to know if at the time of trial even the Dutch officers will be more conveniently located for trial in The Netherlands. Perhaps they will

ees of the salvor, a Dutch company, which rescued the vessel, towed it to Rotterdam and conducted a salvage investigation in Rotterdam. The principal documentary evidence will be provided by the vessel's "managers," a Dutch corporation,[17] and the owners of the salvage company, whose offices are in Rotterdam. The contacts with The Netherlands therefore not only substantially outweigh those favoring the Eastern District of Louisiana, but they also represent nearly all the contacts relevant to this dispute. The Netherlands is by a substantial margin the most convenient location for this litigation.

■ Because the Dutch forum represents an available alternative, and because the relevant public and private interests strongly favor this forum over that of plaintiff's choice, the district court's dismissal for forum non conveniens was properly exercised and well within its discretion. We therefore affirm it.

AFFIRMED.

---

have retired or will be on vacation in The Netherlands, but they may just as likely be at sea on another international commercial vessel. Without the location of the home offices of the vessel and salvage company in The Netherlands, the relative convenience of the Dutch forum would not have been so clear.

17. Although the M/V Getafix officially is owned by a Netherlands Antilles corporation, The Netherlands corporation which manages the vessel will be the entity to supply necessary testimony and documentation at trial. The uncontested finding of the district court is that "[t]he vessel is managed by a Dutch corporation which is responsible for the technical maintenance and manning of the vessel."